# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

**ERIC VONDRAKE**         **CASE NUMBER:** 19 - cv - 337 - JB - M

*Plaintiff*

**VS**

**FUJI HEAVY INDUSTRIES LTD.**
**AND SUBARU OF AMERICA, INC.**

*Defendants*

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Eric Drake hereinafter referred to as "Plaintiff" and bring this action against Defendants Fuji Heavy Industries, Ltd. ("Fuji") and Subaru of America, Inc. ("SOA") (collectively "Subaru" and or "Defendants") and allege as follows:

## I. NATURE OF THE ACTION

1.     Plaintiff brings this lawsuit regarding reoccurring problems with the 2014 Legacy, many of which are well-documented defects of the 2014 Legacy. This is also an action for contract dispute and a lemon car. Although Subaru sold and leased the 2014 as being "partial zero emission," the vehicle have defective engines that burn a substantial portion of their engine oil, leading to increased emissions, decreased fuel efficiency, and potentially significant damage to the engine, catalytic converter, and other components.

2.     Subaru discovered the defect years ago, but was unable to eliminate the problem. Instead, Subaru told its dealerships (but not the public) that the defects existed, how to diagnose it, and what repairs to make. And Subaru continued selling and leasing the

1

vehicles without disclosing the defect to its customers. Specifically, drivers are not told that their vehicles may run out of oil between scheduled changes or that their vehicles can shut down without warning as a result of the oil consumption defect, and or that this defect could lead to expensive repairs in their Subaru's. The Plaintiff for example, have had to continually add oil to the 2014 Legacy, even between regularly scheduled oil changes.

3.      While Subaru is obligated to repair the defect under its warranties, it frequently denies coverage by telling drivers who complain of abnormal oil loss that such is "normal" and that there is no known problem with their vehicle. Many drivers are thus turned away without receiving warranty repairs, while the engine oil loss in their vehicle worsens over time. Three Subaru dealers that diagnosed and worked never told Plaintiff that there was a problem with oil consumption in the 2014 Subaru Legacy's.

4.      Plaintiff has been informed that the engine in the 2014 Legacy is required to be sealed by authorized Subaru dealerships because the vehicle was consuming so much oil. This problem was nevertheless very evident in the 2014 Legacy, though the authorized dealers never mentioned the problem. It is estimated that the cost of sealing the engine is $2,700.00 (two thousand seven hundred dollars). The 2014 Legacy also had a problem with its front suspension, which Subaru refused to repair the Legacy even though the problem had obviously occurred while the vehicle was under warranty. The vehicle was only out of warranty for a short time. Defendants breached the extended warranty that it provided to the Plaintiff, thus Defendant Subaru cannot argue that the Plaintiff gave up his rights when he signed the annexed settlement agreement, because Subaru failed to inform the Plaintiff that the oil consumption problem was an on-going problem. Plaintiff has had another on-going problem with the back-up camera that will not perform as designed and then in two to six days began operating as normal. Michael Dinh, a service adviser at 5-Star Subaru dealership was able to witness this malfunction. But Mr. Dinh was unable to schedule me for

2

that day, but by the time Plaintiff drove home; the camera began operating as normal. This has been an on-going problem. Another concern that has been on going is after starting the 2014 Legacy, and placing the vehicle in reverse, the car will stall and have to be restarted.

5.      In late 2013, Subaru dealt with this growing problem by secretly expanding its warranty coverage. Subaru told its dealerships they could perform free repairs for vehicles within 5 years and 60,000 miles if they were consuming at least 1/3 of a quart of engine oil per 1,200 miles (a rate that is three times lower than what Subaru publicly claims to be normal). Even Subaru's expanded warranty coverage, however, is not enough to satisfy Subaru's state-mandated emissions warranty obligations (which require free repairs through 8 years and 100,000 miles) and, worse yet, Subaru has actively hidden the warranty expansion from drivers. Thus, drivers like the Plaintiff that were previously turned down for warranty coverage are not told they can return for warranty-covered repairs. And drivers who visit Subaru dealerships today are told neither of the defects nor about the new program, so they do not know they are entitled to a free repair under warranty. As a result, drivers like Plaintiff Drake, are routinely turned away despite qualifying for free repairs.

6.      On December 27, 2018, an authorized Subaru dealership noted that the oil level was 1 (one) quart low, however, the 2014 Legacy oil was changed on October 17, 2018. An even more unspeakable problem is that the Subaru dealership never replaced the oil level, but it was merely noted and written on the estimate. As a result of the excessive oil consumption, the 2014 Legacy is in need of having its engine sealed at a cost of: $3,019.00. The 2014 Legacy was brought into the dealership on December 27, 2018 because of flashing lights on the dash. The dealership diagnosed the 2014 needing a valve body and harness, needing a value body and harness, and CTV flush. Estimated cost: $1,933.07.

7.      Subaru's breached its warranties in violation of state laws. Subaru has and will continue to benefit from its unlawful conduct—by selling more vehicles, at a higher

price, and avoiding warranty obligations—while consumers like the Plaintiff are harmed at both the point of sale and as their vehicles quickly begin to fail. Had the Plaintiff known about the defect at the time of purchase, he would not have purchased the 2014 Legacy Subaru. The defect has also forced Plaintiff to constantly pay to add engine oil in the 2014 Legacy, and it is the underlying problem that led to having to now have the 2014 Legacy's engine sealed. Plaintiff was never advised by three Subaru dealerships to have an oil consumption test while the Legacy was at the dealerships for diagnostic or regular schedule maintenance or other work on the 2014 Subaru Legacy.

8.     To remedy Subaru's unlawful conduct, the Plaintiff seeks a brand new limited six-cylinder Legacy with all accessories and options at no cost, and he will turn over to the Defendants the 2014 Legacy that is made the basis for this lawsuit. Additionally, the Plaintiff request a substantial discount (At Subaru costs to build a new Ascent) to be purchased within 5-years of any settlement agreements. Further, the Plaintiff seeks addition damages and restitution from Subaru, as well as notification about not only the defect itself, but also the existence and parameters of Subaru's secret warranty program. Finally, the Plaintiff seeks damages in excess of $75,000.00 for the fraud, fraudulent concealment, and other causes of actions pled herein of $400,000.00.

## II. JURISDICTION AND VENUE

9.     Venue is proper pursuant to 28 U.S.C. Section 1332. Jurisdiction is also conferred on this Court pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, Defendants have advertised in this district and have received substantial revenue and profits from selling and leasing their vehicles in this district; therefore, a substantial part of the events and omissions giving rise to the claims occurred within this district.

10.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed their vehicles into the stream of commerce within Alabama and throughout the United States. Plaintiff invokes this Court's jurisdiction of this action also under 15 USC §2301, 28 U.S.C. § 1331, 1343, 49 U.S.C. §§ 32701-32711, 49 C.F.R., Sections 580.1-580.6, and Federal Trade Commission Act §§ 455.2–455. And supplemental jurisdiction under 28 U.S.C. § 1367, over state law violations, and 42 USC §1981.

## III. FACTUAL BACKGROUND

11.     The Subaru Legacy made subject of this lawsuit was purchased in 2014, brand new from an authorized Subaru dealer. From the very beginning, the 2014 Legacy would shut off for no apparent reasons when placing the vehicle transmission gear shifter in reverse. This defect has been consistent throughout the ownership of the vehicle. Hereon, the 2014 Legacy made the basis for this lawsuit shall be referred to as, "2014 Legacy" or "Legacy."

12.     Thereafter, with less than 7,500 miles on the Legacy the back up camera began to malfunction when placing the vehicle's transmission gear shifter in reverse, and the picture would be black, after days, the camera would suddenly begin operating as normal. The 2014 Legacy also has caused tires to be worn on the inside of the front tires repeatedly. This was a problem that was evident from the very beginning of the ownership of the Legacy, even after the Legacy had a 4-wheel electronic professional alignment and new tries installed. The navigation in the Legacy also had to be replaced at only 43, 600 miles. The navigation system also controls the back-up camera, which has been problematic since the installation of the new navigation system. However, technicians were unable to duplicate the problem since the back-up camera fail to operate as designed for 6 to 10 days, then began working again.

13.     The Legacy was purchased for personal and household use. The 2014 Legacy vehicle identification number is: 4S3BMBJ69E3012648.

14.     In January of 2015, with approximately 8,000 miles on the vehicle, Plaintiff noticed that the Legacy was consuming a substantial amount of engine oil, even shortly after a regular oil change. Plaintiff changed the oil more often than the 7,500 miles recommended engine oil change intervals. Plaintiff changes his oil every 3,500 but not more than 4,000 miles, using only premium Mobil 1 synthetic motor oil with the proper oil weigh.

15.     Although Plaintiff complained about the high consumption of oil to three Subaru dealers, none of the three dealerships admitted that this was an on going problem, nor did any of these authorized dealers suggest having an oil consumption test on the Legacy.

16.     Plaintiff was never informed of the problem with Subaru engines by any of the three dealerships that examined or worked on his Legacy. Plaintiff has come to the dealerships for the tech's to add oil in the Legacy on the service drive area. This oil consumption problem was never repaired because Plaintiff was never informed by any Subaru's dealership that there was a problem with oil consumption. Without being informed of the problem, it has resulted in an expensive resealing of Plaintiff's 2014 Legacy's engine.

17.     Unquestionably, no rational person would have purchased the 2014 Legacy, rather than a Honda Accord or Toyota Camry if the defects had been disclosed to him or her.

18.     Not only was the over consumption of oil a problem, but there were other problems such as: the Legacy shutting off when placing it in reverse, uneven wear of tires on the inside, (which is a problem that many other consumers have experienced), the back up camera failing, together with other mechanical problems pled herein created extreme mental anguish, especially when Subaru knew that many of these problems were known by them and the dealers, but not to consumers who were misled into buying or leasing their products.

6

## IV. **PARTIES TO THE LITIGATION**

19.     The Plaintiff is an individual who is a US resident of Alabama.

20.     Defendant Fuji Heavy Industries Ltd. is a Japanese corporation located at The Subaru Building, 1-7-2 Nishishinjuku, Shinjuku-ku, Tokyo, 160-8316, Japan. Fuji is responsible for the design, manufacturing, distribution, marketing, sales, and service of Subaru vehicles, including the Legacy that is made basis for this litigation, around the world, including in the United States. Service of process can be made on Fuji Heavy Industries Ltd. by way of The Hague Service Convention.

21.     Defendant Subaru of America, Inc. is a New Jersey corporation with its principal place of business located in Cherry Hill, New Jersey. Subaru of America shall be referred to as, "SOA." SOA is the wholly owned U.S. sales and marketing subsidiary of Fuji, and distributes, markets, sells, and services Subaru vehicles in the U.S. On information and belief, Subaru of America Inc., can be served with process through its registered agent, The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628.

22.     Fuji and SOA have common leadership: SOA's sales, marketing, and distribution efforts are headed by corporate officers of Fuji. For example, Takeshi Tacihmori, the chairman and CEO of SOA is also a Director and Corporate Executive Vice President for Fuji in charge of the Subaru Global Marketing Division, Subaru Japan Sales and Marketing Division, and Subaru Overseas Sales and Marketing Divisions 1 and 2. The Chairman of SOA is also a Corporate Senior Vice President of Fuji who is Chief General Manager of Subaru Overseas and the Vice President in charge of Sales and Marketing, Division 1.

23.     Fuji communicates with SOA concerning virtually all aspects of the Subaru vehicles sold and leased within the United States. Defendants develop the owner's manuals, warranty booklets, and maintenance recommendations and schedules for the Legacy that is made the basis for this litigation.

## TOLLING OF STATUTES OF LIMITATION

24.     Any applicable statutes of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiff could not have reasonably discovered the true, latent defective nature of the 2014 Legacy until shortly before this litigation commenced. Defendants have concealed the truth and conspired with its dealerships to conceal serious defects in the 2014 Legacy that they manufactured. Furthermore, regarding the extended warranty, fraud carries a 4-year statutes of limitations.

## FACTUAL ALLEGATIONS

### A. Background

25.     Many automotive manufacturers utilize an internal combustion engine design with a "V" piston arrangement. In this design, the cylinders and pistons are aligned in two separate planes so that they appear to be in a "V" when viewed along the axis of the crankshaft. This configuration generally reduces the overall engine length, height and weight compared to an equivalent inline configuration.



**Example of a "V" piston design**

26.     Since approximately 1966, rather than use a conventional "V" configured engine design, Subaru has instead incorporated a flat engine, "Boxer" design in which the pistons face away from each other in a 180º symmetrical layout.

27.     In the fall of 2010, Subaru announced the release of a new generation of its Boxer engine known as the "FB." Subaru said its main motivation for launching the new FB engine was improved "economy and performance."

## SUBARU BOXER HORIZONTALLY-OPPOSED ENGINE



28.     According to Subaru's website, "*Subaru firmly believes that the Horizontally-Opposed Engine is the optimum design for driving enjoyment. The pistons face away from each other in a 180º symmetrical layout around the crankshaft and work to balance out each other's vibrations, delivering a smooth, shudder-free feel. This is because the engine can rotate freely at any given speed, delivering heart-gripping response to the driver. The length and height of this engine layout can be kept shorter than a traditional in-line engine, and it is*

*also lighter. The engine can be mounted lower in the vehicle than other engines, and weight balance on the left and right can be made almost exactly the same. In this design, the low centre of gravity engine lowers the centre of gravity of the entire car. Similarly, a symmetrically balanced engine increases the symmetrical balance of the entire car. Both of these aspects combine to deliver a safer, more stable, and ultimately, more enjoyable experience on the road."* [1]

29.     FB engines use reciprocating pistons to convert pressure into a rotating motion. To generate the rotating motion, a four-step sequence is used. First, the "intake stroke" begins with the inlet valve opening and a vaporized fuel mixture pulled into the combustion chamber by the downward motion of the piston. Second, the "compression stroke" begins with the inlet valve closing and the piston beginning its movement upward, compressing the fuel mixture in the combustion chamber. Third, the "power stroke" begins when the spark plug ignites the fuel mixture, expanding the gases and generating power that is transmitted to the crankshaft and ultimately to the wheels of the vehicle. Fourth, the "exhaust stroke" begins with the exhaust valve opening and the piston moving back down, allowing the exhaust gases to escape the cylinder. The exhaust valve then closes, the inlet valve opens, and this combustion cycle repeats itself. A diagram of the combustion cycle sequence appears below:

---

[1] See http://www.subaru-global.com/tec_boxer.html (last visited January 31, 2019).



Intake Stroke        Compression Stroke        Power Stroke        Exhaust Stroke

**B. 2014 Legacy**

30.     This lawsuit concerns the following Subaru vehicles equipped with the FB engine, referred to throughout the complaint as "2014 Legacy" or "Legacy":

**2014 Legacy (2.5L)**

31.     The 2014 Legacy used the FB25B engine.

**C. The Oil Control Strategy in 2014 Legacy's.**

32.     During the four-step sequence described above, engine oil is used to lubricate the piston and cylinder wall as the piston moves up and down. Engine oil is necessary to reduce wear on moving parts throughout the engine, improve sealing within the combustion chamber, and to cool the engine by carrying heat away from the moving parts. If there is insufficient engine oil, the engine will not have the necessary lubrication or cooling, causing premature wear of internal parts, inadequate performance, and catastrophic engine failure.

33.    The top sidewall of each engine piston contains rings that prevent engine oil from entering the combustion chamber, as well as optimizing compression. On each of the four pistons, there are three rings: (1) the top compression ring, (2) the second compression ring, and (3) the oil control ring.

34.    The oil control ring is responsible for wiping excess oil from the cylinder wall and returning excess oil through the ring openings to the engine oil pan. The oil control ring includes two thin rails or running surfaces.

35.    An exemplar diagram of a piston with these rings is shown below:



36.    The oil control strategy in the 2014 Legacy's does not work as intended, allowing engine oil to escape past the oil control ring and into the combustion area. This is the result of oil control rings that do not integrate properly with the cylinders in which they operate. Although oil control rings do not require maintenance, and are lifetime parts, the rings in Legacy wear down, as shown below, whereby the oil control ring is worn flush with the piston wall, allowing engine oil to be consumed during the compression cycle.



**Piston from Subaru Legacy Engine**



**Subaru Legacy Piston with Worn Oil Control Ring**

37.     When the oil control ring fails to wipe excess oil form the cylinder wall, engine oil can enter the combustion chamber of the engine. Once in the combustion chamber, oil is burned off rather than returned for further lubrication. This not only causes a decrease in engine performance but also decreases fuel efficiency, causes carbon deposits to form, and can damage the engine and various ignition and emission components.

38.     In September and December 2013, Subaru issued four Technical Service Bulletins ("TSBs") to address the defect. (TSBs are documents used by automotive manufacturers to inform dealership technicians about new information, including vehicle problems, new repair procedures, and improved parts recommended repairs issued.) Subaru revised the four TSBs in May 2014.

14

39.    The TSBs acknowledge the 2014 Legacy's experience abnormally high levels of engine oil consumption and advise technicians about the lengthy and expensive repair process. Among other details, the TSBs note that:

- The change was made as a result of findings of unanticipated wear of the oil control rings.

- Because of the ring wear, Subaru anticipated engine oil consumption would be consistently higher than normal and would remain that way.

- Subaru updated the oil control rings, changing the surface treatment applied to the rings.

- Once the wear occurs, the condition will remain until repaired.

40.    In the TSBs, Subaru recommends repairing the defect by replacing the FB engine's piston ring set. This requires removal and complete disassembly of the engine, and the TSBs estimate a labor time of between 11.4 and 13.1 hours when performed by a Subaru technician. Some drivers have been charged over $8,000 for the repair. As annexed, the cost to reseal the 2014 Legacy of the Plaintiff is over $3,000.00, and if that figure was added to other equipment and repairs required for Plaintiff 2014 Legacy, the cost to restore the 2014 Legacy to a safe and reliable condition could exceed $10,000.00. *See* **Exhibit 1**, Declaration.

41.    As a result of the defect, and oil consumption in 2014 Subaru Legacy vehicles that is consistently higher than normal, the "partial zero emission" vehicles suffer from excessive carbon deposits, decreased fuel efficiency, and damage to the vehicle ignition and emission systems, including those discussed below.

42.    The 2014 Legacy have four spark plugs, which deliver electric current from the ignition system to the combustion chamber to ignite the mixture of compressed fuel and air during the power stroke of the combustion cycle. Properly functioning spark plugs help the engine run efficiently, minimizing emissions.

43.    The 2014 Legacy were also manufactured with two oxygen sensors and two catalytic converters. Optimum cylinder combustion depends on the correct air to fuel ratio in

15

order to provide a near stoichiometric mixture. The oxygen sensors monitor unburned oxygen in the exhaust gases and send this information to the vehicle's engine control module, which then uses this information to determine if the fuel mixture is rich (too much fuel) or lean (not enough fuel) and thereby adjusts the air/fuel mixture accordingly. The oxygen sensors also measure oxygen levels after the exhaust reacts with the catalytic converter, to help the engine run efficiently and to minimize emissions. The catalytic converters are emissions control devices designed to convert toxic pollutants, contained in exhaust gases, to less toxic pollutants by catalyzing a redox reaction (oxidation or reduction). Both the oxygen sensors and the catalytic converters are located in the exhaust system as shown below:[2]



44.     The defect can contaminated in 2014 Legacy's oxygen sensors, catalytic converters, and spark plugs, damaging and causing inefficiency of those parts, and leading to less efficient engines and increased emissions. Contamination can impair the oxygen sensors' accuracy, for example, hampering the catalytic converters and leading the engine to not pro-

[2] Front catalytic converter depicted at "(2)", rear catalytic converter depicted at "(4)", front O2 sensor depicted at "(5)" and rear O2 sensor depicted at "(6)."

perly detect emission issues. Likewise, the catalytic converters can become poisoned after engine oil is burned during the combustion cycle. The burnt oil is incorporated into the vehicle's expelled exhaust gases, with the exhaust containing substances that coat the working surfaces of the catalytic converters (encapsulating the catalyst so that it cannot contact and treat the exhaust).

45.     The increased oil consumption can also caused the 2014 Legacy's to run dangerously low on engine oil far earlier than a driver might reasonably expect. Even when the 2014 Legacy's do not run out of engine oil, the defect can cause parts like the catalytic converters to fail, which—like engine failure—can cause the Legacy to suddenly buck, stall, and shut down when traveling at high speeds, risking the lives of drivers, their passengers, and others on the road.

**D. Defendants Concealed the Defect**

46.     Defendants have known for years about the defect and its consequences.

47.     Subaru is experienced in the design and manufacture of consumer vehicles. Subaru conducts extensive pre-release testing on batches of components, including the FB engines, to verify the parts are free from defects and comply with Subaru's specifications. Given the speed and frequency with which the defect typically becomes apparent, it is not plausible that Subaru's preproduction testing would not have alerted Subaru to the existence of the defect. Only Subaru, however, has access to its prerelease testing data.

48.     Subaru also receives data about how its vehicles are performing in the days, weeks, and months after they are sold. Subaru collects information from both drivers and dealerships, including through complaints, warranty claims, repairs and replacement parts

data, and other aggregated data sources. Subaru has exclusive access to this information too.

49.     Defendants' Quality Assurance Group interacts with Subaru authorized service technicians in order to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues. Subaru's Quality Assurance Group also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

50.     Defendants' National Warranty Department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles. Defendants dictate that when a repair provide Defendants with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in case Defendants later determine to audit the dealership or otherwise verify the warranty repair. For their part, service centers are meticulous about providing this detailed information about in-warranty repairs to Defendants because they will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.

51.     Defendants were also aware of the high number of replacement parts ordered. All Subaru service centers are required to order replacement parts, including engines, piston assemblies, and piston rings directly from Defendants. Other independent vehicle repair shops that service 2014 Legacy's also order replacement parts directly from Defendants. Defendants routinely monitor part sales reports, and Subaru has designated internal teams that are responsible for actually shipping parts requested by dealerships and technicians. Thus, Defendants have detailed, accurate, and real-time data regarding the number and

frequency of replacement part orders. The sudden increase in orders for FB engines and engine components used in the 2014 Legacy's was known to Defendants, and should have alerted them to the scope and severity of the defect.

52.     Subaru monitors drivers' safety-related reports to the National Highway Transportation Safety Administration ("NHTSA"), which can be viewed on the NHTSA's website. Dating back to at least March 2012, drivers of 2014 Legacy's began contacting the NHTSA to complain about their vehicles experiencing oil loss, the resultant engine failure, the inherent dangers, and the high repair costs.

53.     Subaru's Customer Relations departments routinely monitor the Internet for customer complaints and have retained the services of third-parties to do the same. Further, the Customer Relations division regularly receives and responds to driver calls concerning vehicle problems.

54.     Many owners and lessees of the 2014 Legacy have publicly complained online, or to the Office of Defects Investigation (ODI) within the NHTSA. ODI conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the nation's highways. The following is just one example of the complaints submitted to ODI concerning the 2014 Legacy's excessive consumption of oil:

**NHTSA**

TL* THE CONTACT OWNS A 2014 SUBARU LEGACY. THE CONTACT STATED THAT THE VEHICLE CONSUMED OIL TOO QUICKLY. THE CONTACT HAD TO CONSTANTLY ADD ENGINE OIL TO THE VEHICLE BETWEEN OIL CHANGES AND THE CHECK OIL INDICATOR ILLUMINATED OFTEN. THE VEHICLE WAS TAKEN TO LIBERTY SUBARU (55 KINDERKAMACK RD, EMERSON, NJ 07630, (201) 261-0900) TO BE DIAGNOSED, BUT A FAILURE WAS NOT FOUND. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 62,922.

## 2011-15 Subaru Oil Consumption Update[3]

**CARS.COM —** Vehicles affected by service bulletin:

- 2013 Subaru Legacy*

- **2014 Subaru Legacy***

- 2013 Subaru Outback*

- 2014 Subaru Outback*

- 2011 Subaru Forester*

- 2012 Subaru Forester*

- 2013 Subaru Forester*

- 2014 Subaru Forester*

- 2015 Subaru Forester* (manual transmission)

- 2012 Subaru Impreza**

- 2013 Subaru Impreza

- 2013 Subaru XV Crosstrek

- 2014 Subaru Impreza (manual transmission)

- 2015 Subaru Impreza (manual transmission)

- 2014 Subaru XV Crosstrek (manual transmission)

- 2015 Subaru XV Crosstrek (manual transmission)

-

*With non-turbo 2.5-liter engine

** With 2.0-liter engine

**The problem:** This revised service bulletin aims to address excessive oil consumption in some Subaru models, including the Forester, Impreza, Outback, **Legacy**, and Crosstrek. The problem lies within the short block assembly; previously, Subaru dealers were only replacing pistons and rings to address oil consumption.

_____

[3] https://www.cars.com/articles/2011-15-subaru-oil-consumption-update-1420683845519/

55.    It is apparent from Subaru's actions that it discovered the defect in the 2014 Legacy's but failed to inform the general public and consumers who desired to purchase or lease their products. For the 2012 model year Forester vehicles, Subaru altered the design via a mid-production engine change to try to eliminate the defect. After observing the ring wear and resultant oil consumption, Subaru changed the vehicles' cylinder finish in an attempt to minimize roughness where the oil control ring contacts the cylinders. The change did not fix the vehicles.

56.    Neither then, nor in the years that followed, have Defendants disclosed the defect to drivers or potential customers. Likewise, Subaru has never instructed its dealerships to disclose the defect. The TSBs discussed above were issued only to authorized Subaru dealers and were never issued to the general public or the owners and lessees of the affected vehicles.

57.    As a result of Subaru's inaction and silence, consumers were unaware they were buying or leasing defective vehicles, and many drivers do not discover the defect until after their lives have been jeopardized or various components in their vehicles have been damaged.

58.    As Subaru knows, a reasonable person would consider the defect important and would not purchase or lease a vehicle equipped with the defect, were the defect disclosed in advance, or would pay substantially less for the vehicle. Yet the defect was not known to or reasonably discoverable by the Plaintiff before the purchase of the 2014 Legacy, or without experiencing the defect firsthand.

59.    Even now, years after Subaru first learned about the defect, Defendants has not notified customers of the nature and extent of the defect and the defect's economic, environmental, and safety consequences. Subaru has remained silent even as it discovered the problem internally, issued service bulletins, and heard numerous complaints.

60.     Subaru continues to actively conceal the defect from consumers, including the Plaintiff to this very day. Even when drivers specifically ask whether the vehicles suffer from a known problem, Subaru (through its authorized dealerships) deny that there is a known problem and tell the customer that the oil consumption is normal.

**E.     Subaru's Warranty-Related Practices**

61.     Subaru issued three relevant warranties with each 2014 Legacy's: a "New Vehicle Limited Warranty," a "Powertrain Limited Warranty," and an "Emissions Warranty."

62.     Under the New Vehicle Limited Warranty, Subaru agreed to repair defects reported within the earlier of 3 years or 36,000 miles.

63.     Under the Powertrain Limited Warranty, Subaru agreed to repair defects affecting various powertrain components through 5 years and 60,000 miles. According to the Warranty and Maintenance Booklet, Powertrain Coverage Components include:

- Engine
- Engine block and all internal parts
- Cylinder heads and valve trains
- Oil pump, oil pan
- Timing belts or gears and cover
- Water pump
- Flywheel
- Intake and exhaust manifolds
- Oil seals and gaskets

(emphasis added). The piston rings, including the oil control rings, are both "internal [engine] parts" and "oil seals," bringing them within the scope of Subaru's Powertrain Limited Warranty.

64.     As Subaru knows, some level of piston ring wear and oil loss manifests typically soon after the vehicles are first sold or leased. But consumers are not warned of this defect. Subaru is obligated by its warranties to repair 2014 Legacy's free of charge.

65.     Subaru instructs vehicle owners and lessees to bring their vehicles to a Subaru dealership for the warranty repairs. The Plaintiff have presented the 2014 Legacy to three Subaru dealerships with a complaint that he now knows is related to piston ring wear, including that his 2014 Legacy is consuming too much oil. But the dealership never advised the Plaintiff that there was a problem or defect known to them and Subaru.

66.     Subaru has evaded its warranty obligations by failing to tell the Plaintiff and other consumers that their vehicles are defective and by claiming that the loss of engine oil is acceptable, and not indicative of a defect requiring warranty repairs or replacements (even though Subaru knew that the defect was present in the 2014 Legacy's).

67.     Consistent with that approach, the above-referenced TSBs state, "If a customer inquires about oil consumption and is close to their next service interval, and consumption has not exceeded 1 quart in that time, the consumption rate should not be considered unusual. Consumption at a rate greater than this should be reviewed on a case by case basis after reviewing the vehicle's usage patterns/history."

68.     The case-by-case review consists of performing what Subaru calls an oil consumption test at the driver's expense. The test consists of changing the oil and filter (usually at the driver's expense), confirming that the oil level was full, and then instructing the customer to drive 1,200 miles and then return to the dealership for an inspection.

69.     If the engine consumed more than one quart of oil in 1,200 miles, the technician was supposed to conduct a diagnostic analysis, beginning with a compression test.

70.    If the engine consumes less than one quart of oil in 1,200 miles, on the other hand, drivers are told the level of oil consumption they are experiencing is "normal" and denied repairs under warranty.

71.    Subaru now recommends that the engine oil in all 2015 or later years Legacy's be changed at intervals of 7,500 miles or 7.5 months. Subaru increased the frequency of oil changes to every 6,000 miles or 6 months.

72.    Thus, if a consumer follows Subaru's recommended maintenance schedule, a loss of one (1) quart of oil every 1,200 miles will result in the consumption of the entire amount of oil contained in the 2014 Legacy's engine at between 6,120 and 6,600 miles.[4] In essence, Subaru's assertion that consistently consuming oil at a rate of one quart per 1,200 miles is acceptable will result in the 2014 Legacy's running out of oil before Subaru's recommend oil change interval of 7,500 miles—an implausible suggestion since this would cause either catastrophic engine failure or, at the very least, sustained, high costs for drivers who would need to be constantly purchasing additional oil for their vehicles. In the Plaintiff's case it resulted in the engine requiring being sealed which is an expensive repair.

73.    Subaru's failure to notify the Plaintiff and the general public and the owners of the 2014 Legacy's regarding the defect is particularly egregious since drivers may run out of engine oil before Subaru's recommended oil change intervals, which would lead to abrupt catastrophic engine damage and place the driver, passengers, and others on the road at risk of accident, injury, and death since the vehicles can buck, stall, and lose power.

74.    In many instances, consumers have incurred and will continue to incur expenses for the diagnosis of the defect, repair and replacement of the FB engine, the cost of

[4] Calculations based on the 5.1 U.S. quart engine oil capacity for the ZX Crosstek, Legacy, Outback, Impreza and 2014 Forester; 5.5 U.S. quart engine oil capacity for the 2012-2013 Forester.

additional engine oil, the cost of additional fuel and reduced MPG, higher emissions and the unnecessary and premature replacement of vehicle emission components including, but not limited to, spark plugs, oxygen sensors and catalytic converters, despite such defect having been contained in the 2014 Legacy's when manufactured by Defendants.

75.    As a result, a number of drivers who presented their 2014 Legacy's at Subaru dealerships because they were suffering engine oil loss were denied warranty repairs and instead told there was nothing wrong with their vehicles. If and when the oil loss worsened after the expiration of the warranty period, the customer would be left to foot the cost of repair on his or her own, often having to pay thousands of dollars for the repair.

76.    On November 5, 2013, Subaru adjusted the scope of its warranty coverage. Pursuant to the adjusted scope, Subaru would perform a piston ring system repair for vehicles that: (i) are still within 5 years and 60,000 miles, and (ii) are experiencing oil loss of at least 1/3 of a quart per 1,200 miles. When that amount of oil (or more) is being consumed by a 2014 Legacy within the 5-year, 60,000-mile powertrain warranty period, no further diagnostics are required and piston ring system repairs are provided for free.

77.    As part of the warranty adjustment program, Subaru implemented a modified oil consumption test. The new test first asks the technician to answer the following questions:

- Customer checked oil level and determine if it was low. How much low?
- Customer reports that low oil level lamp illuminated?
- Customer added oil at that time? How much?
- Technician found low oil level lamp illuminated?
- Technician inspected and found oil level low? How much?

78.    The new test consists of changing the engine oil and filter, confirming that the oil is full, and telling the customer to return when any of the following occurs: (i) a minimum

25

of 1,200 miles have elapsed; (ii) the low engine oil lamp illuminates; or, (iii) the customer determines that the engine oil level has dropped to the add mark. Once the vehicle returns to the repair facility, the technician is to determine the oil consumption rate according to the following formula: oil consumed every 1,200 miles = (oil added ÷ miles driven) x 1200. The test instructions then inform the technician that the repair should be performed according to the applicable service bulletin "If there is oil consumption of 1/3 of a quart (10.7 oz) in 1200 miles observed and calculated as part of this test."

79.    Subaru, however, has not told the Plaintiff and other consumers who owns 2014 Legacy's about its expansion of its warranty coverage and Subaru's secrecy has prevented many drivers, including the Plaintiff from obtaining repairs under warranty. A number of drivers had come to Subaru dealerships before the warranty expansion and were informed that no warranty repairs were available. To date, Subaru has not sent out notice that would alert these drivers that warranty repairs are available to them under the new warranty policy. Likewise, drivers who are not aware of Subaru's warranty adjustment program are not able to assert their warranty rights when they were not provided prompt repairs at Subaru dealerships.

## F.    Problems with Subaru's CVT Transmissions

80.    Subaru also failed to tell the Plaintiff and other consumers of the problems with its CVT Transmissions, and again Subaru extended the warranty on its 2014 transmissions but it came too late before expensive repairs were necessary on Plaintiffs 2014 Legacy.[7]

---

[5] The action comes as more than 100 owners - some of who were angry or frightened - have complained to federal regulators about transmission problems causing stalling. However, there isn't a sole reason for the continuously variable transmission (CVT) warranty being extended

81.     Plaintiff noticed in drafting this original petition that there were several notices on the Internet regarding Subaru's extending the warranty on its vehicles transmissions as shown below:

**TRANSMISSION CVT PROBLEMS**

**MANUFACTURER:**
**Subaru Corporation**
**SUMMARY:**

Subaru Corporation is offering consumers an extended warranty on the continuously variable transmission (CVT) on approximately 1.5 million vehicles after concerns were raised about transmission problems that may cause the vehicle to stall on model year 2012-2017 vehicles.

Affected vehicle owners were notified by the automaker of the warranty extension in July 2017, but many consumers are not satisfied with the company's actions or the inaction of the National Highway Traffic Safety Administration (NHTSA), which has yet to issue a recall of the vehicles for the concerning transmission issues.

A warranty extension is much different from a recall, in that recalls require the manufacturer to fix every vehicle that could potentially be affected, not just the ones that exhibit issues. In addition, the automaker must detail its completion rates in regular filings with the NHTSA. **With the warranty extension, Subaru will only fix vehicles that exhibit problems and the company can set a time limit on the warranty, for example, for 10 years or 100,000 miles. Critics of the action argue that many of the affected vehicles are likely at or close to the 100,000-mile warranty limit already**. This means that necessary repairs may not be performed, and owners risk the vehicle stalling out and potentially being harmed in a crash.

**G.      Uneven Wear on Tires**

82.     Plaintiff has also had uneven wear on his front tires even after he had the vehicle 4-wheel aligned and new tires installed and balanced on the 2014 Legacy. Just as consumers have complained about excessive oil consumption, transmission problems, and their Subaru's shutting down or cutting off, consumers like the Plaintiff have also complained about uneven wear on different websites on the Internet. Below is one of those customers:

**NASIOC - The world's largest online community for Subaru enthusiasts**

I just changed my oil and noticed that the insides of both my front tires are completely bald...even to the point where some of the tire threads are visible. My tires are less than a year old and I had my car re-aligned after I had the tires mounted so I'm not sure why the wear is so terrible. My camber is obviously toe in quite a bit but the guy who aligned my car is very well known in the subie community and gets rave reviews. Any ideas?



Below one of many blogs regarding uneven wear of tires by Subaru owners:

## I have a 2013 Subaru Legacy that I purchased new. It has...

I have a 2013 Subaru Legacy that I purchased new. It has 43000 miles on it. I began hearing a noise a few weeks ago however no lights came up on the dash. I scheduled a service visit at the Subaru dealership where I purchased the car. I was informed that the inside edges of the front tires were bald and that the rear tire (which I had replaced a few months ago due to a screw being lodged) was a different brand and size. She said that the tires need to be less than 1/4 inch difference in outside tread circumference to prevent damage to the transmission. The tech stated that this caused the transmission to go bad and that I need a new transmission. I was told that this is not covered under warranty due to the wrong tire being placed as well as I had not had the tires rotated when specified in the manual. There is no other information on the bill/statement that indicates exactly what is wrong with the transmission. It simply states, "the noise is coming from inside the transmission assembly". Does this sound right to you?

83.    Plaintiff has also had uneven wear on his front tires even after he had the vehicle 4-wheel aligned and new tires installed and balanced on the 2014 Legacy are shown below:



84.    Plaintiff also complained to three different Subaru dealerships about the car loosing power or just cutting off, this occurred many times, however again like so many other problems that the Plaintiff and other consumer has had with the 2014 Subaru, it was difficult to reproduce. Below is another consumer complaining of the same issue to the NHTSA:

**NHTSA ID Number:** 10655186
**Incident Date** May 22, 2014
**Consumer Location** ERIE, PA
**Vehicle Identification Number** 453BMBD60E3****
**Summary of Complaint**

I PURCHASED MY BRAND NEW 2014 SUBARU LEGACY ON MAY 16TH 2014. ABOUT ONE WEEK LATER I WAS DRIVING UP THE SLIGHT INCLINE OF THE DRIVEWAY OF THE APARTMENT HOUSE WHERE I LIVE. AS I REACHED THE STREET I STEPPED ON THE ACCELERATOR TO TURN OUT INTO THE TRAFFIC AND THE CAR COMPLETELY LOST POWER. ABOUT 5 SECONDS LATER THE POWER RETURNED AND THE CAR RESPONDED NORMALLY WHEN I STEPPED ON THE ACCELERATOR PEDAL AND I WAS ABLE TO DRIVE THE CAR NORMALLY. THREE OR FOUR DAYS LATER THE SAME THING HAPPENED AGAIN WHILE I WAS DRIVING IN TRAFFIC, AS I TRIED TO ACCELERATE THE CAR'S ENGINE LOST POWER WHEN I STEPPED ON THE ACCELERATOR. THIS SAME LOSS OF POWER NOW HAPPENS ABOUT TWO OR THREE TIMES EACH WEEK. I CURRENTLY HAVE ABOUT 2500 MILES ON THE CAR. I HAVE TAKEN IT TO MY LOCAL SUBARU DEALERSHIP ON THREE SEPARATE OCCASIONS FOR THIS COMPLAINT AND THEY HAVE KEPT THE CAR FOR A TOTAL OF ABOUT THIRTY DAY FOR OBSERVATION, TESTING, AND REPAIR BUT THEY HAVE BEEN UNABLE TO REPRODUCE OR SOLVE THE PROBLEM AND CAN FIND NOTHING WRONG WITH MY CAR. THEY WARNED ME ABOUT DRIVING WITH TWO FEET BECAUSE IF THE BRAKE IS APPLIED AT THE SAME TIME AS THE ACCELERATOR A PROBLEM LIKE THIS COULD OCCUR BUT I DO NOT DRIVE USING BOTH FEET AND HAVE ALWAYS DRIVEN USING ONLY ONE FOOT. *TR

85. The Plaintiff had to replace the navigation system in the 2014 Legacy with only 40K miles, and the back-up camera have stopped working more than 20 times, but by the time the Plaintiff get the vehicle to the dealership, the camera start working again. Plaintiff has annexed declarations of Sherrie Cash and the Plaintiff who have witnessed this problem. A service adviser at 5-Star Subaru, Mr. Michael Dinh, also witnessed the mechanical malfunction of the back up camera. When placing the transmission sifter in reverse, the camera supposed to show a live picture of the rear of the vehicle for safety purposes. In September of 2018 the Plaintiff arrived at 5-Star Subaru in the service drive with the 2014 Legacy. Mr. Dinh sat in the 2014 Legacy and witnessed the back up camera malfunction. When Mr. Dinh started the 2014 Legacy and moved the transmission shifter to reverse, the screen was black and the camera was importable. However, Mr. Dinh could not provide a loaner car and thus he set an appointment. Yet, by the time the Plaintiff reached his

home, the camera was working as it was designed—showing a clear picture of the rear of the 2014 Legacy. The Plaintiff made contact with Mr. Dinh by telephone, and cancelled the appointment because the camera was now working properly after he returned home. Plaintiff followed up with Mr. Dinh in January of 2019, and asked him to execute a declaration because he is the only service adviser who witnessed the back up camera malfunction. He stated that he would have ask the service manager, thereafter he said no I cannot sign the document. While in the presence of the service manager, Mr. Dinh denied that he saw the back up camera malfunction. Plaintiff will present evidence to the Court that Mr. Dinh did in fact witness the back up camera malfunction. It would appear that the Defendants and its dealerships are willing to conspire to present false evidence.

## ADDITIONAL COMPLAINTS TO NHTSA BY CONSUMERS REGARDING THE EXCESSIVE OIL CONSUMPTION OF 2014 LEGACY'S

**NHTSA ID Number:** 11162239
**Incident Date** October 9, 2018
**Consumer Location** Unknown
**Vehicle Identification Number** 24S3BMBC61E****
**Summary of Complaint**

TL* THE CONTACT OWNS A 2014 SUBARU LEGACY. THE CONTACT STATED THAT THE VEHICLE CONSUMED OIL TOO QUICKLY. THE CONTACT HAD TO CONSTANTLY ADD ENGINE OIL TO THE VEHICLE BETWEEN OIL CHANGES AND THE CHECK OIL INDICATOR ILLUMINATED OFTEN. THE VEHICLE WAS TAKEN TO LIBERTY SUBARU (55 KINDERKAMACK RD, EMERSON, NJ 07630, (201) 261-0900) TO BE DIAGNOSED, BUT A FAILURE WAS NOT FOUND. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 62,922.

**NHTSA ID Number:** 11019076
**Incident Date** July 1, 2017
**Consumer Location** Unknown
**Vehicle Identification Number** 4S3BMBC65E3****
**Summary of Complaint**

MY CAR KEEPS RUNNING ON LOW OIL BEFORE THE LIISTED NEXT OIL CHANGE .AND A SUBARU DEALERSHIP CHANGES IT EVERYTIME ITS DUE. CALLED THEM UP AFTER THE THIRD TIME IT HAPPENED AND THEY SAID TO JUST ADD OIL

## THE COURT SHOULD APPLY ALABAMA LAW

86.    The substantive laws of Alabama should apply to the proposed nationwide defect in the 2014 Legacy's, as defined below, because Plaintiffs properly brought suit in this District.

87.    Alabama's substantive laws may be constitutionally applied to the claims of Plaintiffs under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. Alabama has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff, thereby creating state interests that ensure that the choice of Alabama state law is not arbitrary or unfair. The claims asserted by Plaintiff in this complaint create state interests that ensure that the choice of Alabama state law is not arbitrary or unfair.

88.    Specifically, Defendants' sells its product in Alabama, and make a substantial gain in this state. According to its website, Subaru has several dealerships in the state of Alabama. Landers McLarty Subaru is located at: 5790 University Dr NW, Huntsville, Alabama 35816, Montgomery Subaru is located at: 3000 Eastern Blvd, Montgomery, Alabama 36116, Jim Burke Automotive is located at: 1301 5th Ave N, Birmingham, Alabama 35203, Koby Subaru is located at: 1431 E I65 Service Rd S, Mobile, Alabama 36606, and Hendrick Subaru is located at: 2929 John Hawkins Parkway, Hoover, Alabama 35244. Therefore, Defendant Subaru is earning profits throughout the entire state of Alabama and thus, Defendant should not be surprised that it is hailed into court in this district and in this state.

89.     Defendants conduct substantial business in Alabama and, therefore, Alabama has an interest in regulating Defendants' conduct under its laws. Defendants' decision to conduct substantial business in Alabama avail themselves of Alabama's laws renders the application of Alabama law to the claims herein constitutionally permissible.

90.     Upon information and belief, Defendants' affected all consumers who owns defective 2014 Legacy's that reside in the United States. For instance, Defendants' marketing and advertising efforts were likely created in and orchestrated to target consumers like the Plaintiff in Alabama and across the nation. As a result, Alabama is the locus where the conduct causing injury to the Plaintiff occurred and emanated.

91.     The application of Alabama's laws to the Nationwide Defective 2014 Legacy's is also appropriate under Alabama choice of law rules because Alabama has significant contacts to the claims of the Plaintiff, and Alabama has a greater interest in applying its laws here than any other interested state.

## FIRST CAUSE OF ACTION

## COUNT 1.    VIOLATIONS OF THE ALABAMA CONSUMER FRAUD ACT

92.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

93.    Alabama Code Title 8. Commercial Law and Consumer Protection, protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…"

94.    Pursuant to Alabama Code Title 8. Commercial Law and Consumer Protection Act, Plaintiff is defined as a *consumer* who purchased a product from the Defendants that was defective.

95.    In the course of Defendants' business, they knowingly concealed, suppressed, and omitted the fact that the 2014 Legacy's are defective, with the intent that Plaintiff and other consumers rely upon that concealment, suppression, and omission when purchasing or leasing the 2014 Legacy's. The existence of the defect, which manifests in all or substantially all 2014 Legacy's, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, and have led to thousands of dollars in expenses for the Plaintiff to repair his 2014 Legacy, as well as negatively affects of the Legacy's emissions, requires expensive and inconvenient maintenance efforts, and causes the 2014 Legacy's to be worth substantially less than they would otherwise be valued.

96.    Subaru has engaged in unfair and deceptive trade practices, including representing that the 2014 Legacy's have characteristics, uses, benefits, and qualities which they do not have; representing that the 2014 Legacy's are of a particular standard and quality when they are not; advertising the 2014 Legacy's with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive. Further, Subaru's acts and practices described herein offend established public policy because of the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Subaru fraudulently concealed the defective nature of the 2014 Legacy's from the Plaintiff and other consumers.

97.    Subaru's actions as set forth herein occurred in the conduct of trade or commerce.

98.    Defendants' conduct caused Plaintiff to suffer an ascertainable loss. Plaintiff was convinced to purchase the 2014 Legacy he otherwise would not have, overpaid for the vehicle, did not receive the benefit of bargain, and his 2014 Legacy suffered a diminution in value. Plaintiff has also incurred and will continue to incur costs for oil consumption. Plaintiff have brought into service the 2014 Legacy to three different authorized Subaru dealerships since 2014, and none of the Subaru dealership made the Plaintiff aware of an oil consumption test and or what the test was used for. As pled herein, the Defendants dealerships purposely mislead consumers by not advising them of the defect because Subaru asked the dealerships not to reveal the defect to those who purchased or leased its products.

99.    The Plaintiff's damages are the direct and foreseeable result of Defendants' unlawful conduct. Had the defect in the 2014 Legacy's been disclosed, Plaintiff and other consumers would not have purchased or recommended the purchase of that vehicle or would have paid less for the 2014 Legacy and would have been spared the subsequent expenses.

100.    Plaintiff will also serve the Alabama Attorney General with a copy of this Complaint.

## SECOND CAUSE OF ACTION

### COUNT 2.    BREACH OF EXPRESS WARRANTY

101.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

102.    Defendants provided all purchasers and lessees of the 2014 Legacy with the express warranties described herein, which became part of the basis of the bargain. Accordingly, Defendants' warranties are express warranties under state law.

103.    The parts affected by the defect, including the pistons, piston rings, engine block, oxygen sensors, transmissions, and catalytic converters were manufactured and distributed by Defendants in the 2014 Legacy's and are covered by the warranties Defendants provided all purchasers and lessors of the 2014 Legacy.

104.    Defendants breached these warranties by selling and leasing the 2014 Legacy with the defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

105.    Plaintiffs notified Defendants of the breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants also know of the defect and yet have chosen to conceal it and to fail to comply with their warranty obligations.

106.    As a direct and proximate cause of Defendants' breach, Plaintiff bought or recommended to buy the 2014 Legacy that he otherwise would not have, overpaid for the vehicle, did not receive the benefit of their bargain, and his 2014 Legacy suffered a diminution in value. Plaintiff has also incurred and will continue to incur costs for oil and an oil consumption tests.

107.    Defendants' attempt to disclaim or limit these express warranties visà-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing the Plaintiff and other consumers about the defect.

108.    The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiff and other owners of 2014 Legacy's. Among other things, Plaintiff and other owners of the 2014 Legacy had no meaningful choice in determining these time limitations the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Subaru and the Plaintiff as well as other owners of the 2014 Legacy, and Subaru knew or should have known that the 2014 Legacy were defective at the time of sale and would fail well before their useful lives.

109.    Plaintiff have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

110.    Plaintiff is entitled to legal and equitable relief against Defendants, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

### THIRD CAUSE OF ACTION

## COUNT 3.    BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

111.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

112.    Defendant Subaru is a "merchant" as defined under the Uniform Commercial Code ("UCC").

113.    The 2014 Legacy vehicle is considered "goods" as defined under the UCC.

114.    With the sale and lease of each 2014 Legacy, Defendants impliedly warranted that the 2014 Legacy were of a merchantable quality.

115.    The 2014 Legacy were not of merchantable quality due to the defect, which causes all or substantially all of the vehicles to consume excess oil, and to not operate as intended, posing an unreasonable risk to driver safety, which have led to thousands of dollars in repair expenses to correct the defect in the Plaintiffs 2014 Legacy. Additionally, it has caused increased emissions, and expensive and inconvenient maintenance.

116.    Defendants' attempt to limit the duration of the applicable warranty period is unconscionable. Among other things, Plaintiff had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Subaru and 2014 Legacy owners, and Subaru knew that the 2014 Legacy's were defective at the time of sale and would fail well before their useful lives, yet Defendants chose to conceal that information, depriving Plaintiff and other owners of the 2014 Legacy's of the ability to make an informed decision with respect to their purchase or lease decision.

117.    As a direct and proximate cause of Subaru's breach of implied warranty, Plaintiffs and the other owners of the 2014 Legacy bought or leased the 2014 Legacy he otherwise would not have, overpaid for the vehicle, did not receive the benefit of the bargain, and the Plaintiffs 2014 Legacy suffered a diminution in value. Plaintiff and other 2014 Legacy owners have also incurred and will continue to incur costs for oil and oil consumption tests.

118.    Plaintiff and other owners of the 2014 Legacy's have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## FOURTH CAUSE OF ACTION

## COUNT 4.    BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

119.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

120.    Every contract in Alabama, New Jersey, California, Texas, Pennsylvania, Florida and New York contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

121.    Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiff and other owners of the 2014 Legacy of the defects in the 2014 Legacy's and failing to fully and properly repair those defects.

122.    Defendants acted in bad faith and/or with a malicious motive to deny Plaintiff and other owners of the 2014 Legacy some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

**COUNT 5.    DECEPTIVE AND UNFAIR TRADE PRACTICES**

123.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

124.    Pursuant to Alabama state and federal laws, Plaintiff plead a cause of action against Defendants and agents for deceptive and unfair trade practices.

125.    The Plaintiff is a 'consumer' as defined under the Ala. Code §§ 8-19-1 through 8-19-15. Plaintiff sought to obtain reasonable and reliable transportation for personal use and other uses as pled herein. Unknowingly to the Plaintiff, Defendants engaged in acts or practices declared unlawful by Alabama Consumer Protection laws. Plaintiff further shows as follows:

a.  Defendant's actions were deceptive when they failed to disclose to the Plaintiff and other consumers of the defects in the 2014 Legacy's, which would lead to expensive repairs and could cause serious injuries. Thus, Defendants are guilty of an 'Unconscionable Action,' of exposing Drake and other consumers to such risks for profit. This type of action is a violation under Alabama Consumer laws allows for damages.

b. The actions of Defendants were unfair and deceptive practices and evasive against the Plaintiff, which caused the Plaintiff injuries through their reckless, intentional, and negligent conduct of failing to warn consumers like the Plaintiff of the real dangers of the defects in the 2014 Legacy's. Defendants breached its reasonable care for Plaintiffs safety. The breach was a producing cause of the Plaintiffs damages. In fact, "[e]ven a truthful statement may be deceptive if it has a capacity or tendency to deceive."

c. Alabama Code, Section 8-19-5 defines "merchandise" to include "anything offered, directly or indirectly to the public for sale." Alabama Code, Section (27) prohibits unconscionable, etc. practices "in connection with the sale or advertisement of any merchandise.

d. Additionally, in Kheir v. Progressive County Mut. Ins. Co., 2006 WL 1594031 (Tex. App. 2006), an appellate court upheld an award for damages under a UDAP claim for wrongful repossession. Defendants advertised the 2014 Legacy falsely and pursuant to Alabama Consumer lawsprohibits unlawful acts "in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of" the defendant. This language appears to be broad enough to cover post-sale acts, and cases such as *Whittingham v. Amended Mortg. Elec. Registration Services, Inc.*, 2007 WL 1456196 (D.N.J 2007), have applied it to debt collection.

e. False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under the federal statute: Federal Trade Commission Act 15 U.S.C. §§ 41-58.

## FEDERAL UNFAIR AND DECEPTIVE TRADE PRACTICES

f. Defendants also violated Federal Trade Commission Act (FTC Act) (15 USC §45) Section 5, [5(a)] because Defendants conduct could and have had an affect on consumers nationwide through commerce. Defendants were unfair and deceptive by:

1. Marketing, and placing for sale the 2014 Legacy with defects in commerce, which could cause injuries and was likely to cause substantial injuries that included but not limited to those injuries pled herein against the Defendants.

2. Injury to consumers cannot be reasonably avoided because Defendants were willing to subject the Plaintiff and consumers nationwide to said risk and dangers for profit;

3. Since Defendants were willing to be untruthful to consumers, its misleading representations, omissions, and practices are material.

5. Defendants conduct is not outweighed by the countervailing benefits to consumers.

126. Under the deceptive trade practices acts, an unfair or deceptive acts or practices, the Plaintiff do not have to show or prove that a claim or representation was intended to deceive, the Plaintiff only need to present to the Court that Defendants actions had the capacity or tendency to deceive. However, in this case, the Plaintiff can show the Court that Defendants intended purpose was to deceive not only Drake, but also unsuspecting other consumers that purchased or leased the 2014 Legacy when the vehicle had serious defects and was not safe to the end user. The capacity to deceive can be found without a finding that anyone has actually been deceived:

a). Plaintiff only has to establish that an act or practice is unfair or deceptive;

b). Plaintiff must demonstrate that the practice has an impact upon public interest.

127. It was a deceptive act or practice for Defendants actions separately and through its partners, agents, its employees, dealerships, retailers, and or its representatives to violate federal and or state laws.

42

a).     By all the ways pled herein in this original petition;

b).     By Defendants violating federal and state civil laws.

128.    The above-described actions were committed by Defendants willfully, wantonly and with reckless disregard for the rights of Plaintiff.

## SIXTH CAUSE OF ACTION

**COUNT 6.     FRAUD BY NONDISCLOSURE AND MISREPRESENTATION**

129.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

130.    At all times relevant hereto, Defendants breached the aforesaid duty of disclosure by representing, either affirmatively or by omission, that the aforementioned described defects to the Plaintiff and other consumers prior to their purchase or lease of the 2014 Legacy.

131.    Defendants concealed from or failed to disclose certain facts to the Plaintiff and other consumers pertaining to defects of the 2014 Legacy. Defendants had a duty to disclose these facts to the Plaintiff and other consumers. These facts were material and Defendants knew that Plaintiff and other consumers were ignorant of such facts regarding the 2014 Legacy, and Plaintiff did not have an equal opportunity to discover such facts until after the 2014 Legacy was purchased. Defendants were deliberately silent when they had a duty to speak. By failing to disclose such facts, Defendants intended to induce Plaintiff and other consumers to take some action or reframe from acting. Plaintiff relied on Defendants' non-disclosure and Plaintiff was injured as a result of these undisclosed facts. Specifically, Defen-

dants remained silent as to the defects of the 2014 Legacy. Defendants also failed to disclose to the Plaintiff their policies on not releasing the defects to the general public, but only to its dealers and upper management.

132.    Defendants made the aforesaid representations, knowing the same to be false or with reckless disregard as to whether they were true or false or, alternatively, innocently but with the intent that Plaintiff and other consumers that purchased or leased the 2014 Legacy rely on the same.

133.    Plaintiff reasonably relied on Defendants representations to his detriment as herein before alleged. Defendants benefited from Plaintiffs' reliance.

134.    As a result, Plaintiff was damaged and injured. Based on the fraud by nondisclosure committed by Defendants, therefore Plaintiff is entitled to, and hereby requests, a judgment against Defendant severally for actual damages, exemplary damages, costs, pre-judgment interest, post-judgment interest, all in amounts to be determined in accordance with applicable law.

135.    Defendants violated the duty owed to Plaintiff by failing to exercise reasonable care and competence. Defendants supplied the false information for the Plaintiff's benefit and guidance, knowing that Plaintiff would in fact rely on it. The Plaintiff reasonably justifiably relied on the false information provided by the Defendants. The fore-going acts and omissions described above of the Defendants, taken separately or collectively, constitute a direct and proximate cause of the Plaintiff's injuries and damages.

## SEVENTH CAUSE OF ACTION

## COUNT 7.    BREACH OF WRITTEN AGREEMENT BREACH OF CONTRACT

136.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

137.    Pursuant to Alabama laws and federal law, Plaintiff pleads a cause of action against Defendants for breach of contract and breach of written agreement.

138.    The settlement, agreement signed by the Plaintiff with Defendant SOA constitute as a contract between the Plaintiff and Defendants, upon representatives of SOA receiving the agreement and not objecting to the language, content, or stipulations of the document. Thereafter, the settlement agreement became a legal instrument of acceptance. However, SOA failed to advise the Plaintiff of the defects that they knew were problems in the 2014 Legacy's, thus the Plaintiff signed off on an agreement through fraud and fraudulent inducement and concealment because the Plaintiff had no knowledge of the historical problems with the 2014 Legacy's oil excess consumption. Nor did the Plaintiff have any knowledge that the 2014 Legacy had suspension problems, which resulted in uneven wear of front tires, which was also known to the Defendants. Plaintiff had no knowledge at the signing of the settlement agreement that the 2014 Legacy's transmission also had significant problems as well as many of the other problems that were not known to the Plaintiff but known to the Defendants.

139.    However, when a problem with the suspension of Plaintiff's 2014 Legacy occurred, Defendant SOA refused to repair the vehicle citing that the warranty had expired although the problem had to have occurred prior to the aforementioned extended agreement expiring. By SOA refused to repair the transmission problem, this action violated the written settlement agreement.

45

## Settlement Agreements are Legal Contracts

140.    A settlement agreement is a contract as defined by Alabama laws. Settlement agreements are contracts and are governed by the general principles of contract law. *Viejo Bancorp, Inc. v. Wood*, supra, 217 App. 3d at p. 208. As a result, a settlement agreement is subject to specific enforcement, provided that it meets the general statutory requirements applicable to the specific enforcement of contracts. (Civ. Code, §§ 3384-3395.) *Renner v. Dan Gamel*, F050807, Court of Appeal of Texas, Fifth Appellate District, 2007 Cal. LEXIS 8675, October 26, 2007. **Texas statutory law provides that concealment, whether intentional or unintentional, entitles the injured party to *rescind the contract*. Thus, under the statute, negligent or even innocent concealment warrants rescission.**

141.    Settlement agreements have the attributes of contracts, and they should be construed as such. See *Ferguson v. Flying Tiger Line, Inc.*, 688 F.2d 1320, 1321-22 & n.1 (9th Cir. 1982); *Cf. United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236-37 & n.10, 43 L. Ed. 2d 148, 95 S. Ct. 926 (1975)("consent decrees and orders have many of the attributes of ordinary contracts"); *Brown v. Neeb*, 644 F.2d 551, 557 (6th Cir. 1981). It is well-established that in Alabama, the law implies in every contract a covenant of good faith and fair dealing that prohibits either party from taking actions that deprive the other of the benefits of the agreement. *Seaman's Direct Buying Service v. Standard Oil Co. of California*, 36 Cal. 3d 752, 768, 686 P.2d 1158, 206 Cal. Rptr. 354, 362 (1984). Under Alabama law, fraud may involve a variety of acts committed by a party to a contract with the intent to deceive or induce another party to enter into a contract. Fraudulent acts include the suppression of the truth by one having knowledge or belief, a promise made without any intention of performing it, or any other act intended to deceive.

46

142.    Whether a false statement was in fact made is generally a question of fact to be decided by the jury. *Pedrotti,* 90 Cal. App. at 671. However, as in this case, where Defendants concealed the defects from the Plaintiff, he could not make a sensible and dependable decision regarding in the contract, but this is apparently what Defendants desired. That the Plaintiff would rely on Defendants failures to disclose, to hide the truth from the Plaintiff so he could sign away his rights, while all the time the Defendants knowing that the 2014 Legacy had other defects. The agreement that Defendants presented to the Plaintiff was made knowingly to induce the Plaintiff to sign away his legal rights. Defendants never suggested to Plaintiff to have an oil consumption test, even though the Defendants were extending the warranty on the 2014 Legacy. The idea was simple, not to make the Plaintiff made aware of the potential and realistic problems and or defects that the 2014 Legacy's have been diagnosed with to induce the Plaintiff to sign away his rights.

143.    Defendants intent was to deceive the Plaintiff, which is usually a question of fact but may be decided as a matter of law where the Defendants as in this case are hiding known facts, failing to disclose those facts and or defects with the intent that the Plaintiff rely upon them. The intent to defraud is necessarily implied "when the misrepresentation are material."

144.    The covenant of good faith and fair dealing is implied in all contracts. *Sons of Thunder v. Borden, Inc.,* 148 N.J. 396, 420, 690 A.2d 575 (1997). It mandates that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* Although this covenant cannot override an express term in a contract, it "has been utilized to allow redress for the bad faith performance of an agreement even when the defendant has not breached any express term." *Seidenberg v. Summit Bank,* 348 N.J. Super. 243, 257, 791 A.2d 1068 (App. Div. 2002); see also *Wilson v. Amerada Hess Corp.,* 168 N.J. 236, 773 A.2d 1121 (2001).

145.    Defendants willingly and intentionally committed fraud by failing to disclose the defects of the 2014 Legacy prior to any settlement agreements being signed. "Even where a contract contains a merger clause, courts permit a party to introduce extrinsic evidence to establish fraud." *Solutia v. FMC Corp.*, 385 F. Supp. 2d 324, 340 (S.D.N.Y. 2005) (citing *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993)).[8]

146.    If the settlement agreement is void, then the agreement must be revoked or renegotiated. Defendant's conduct as redressed is unconscionable.

147.    To bring a claim for fraud in the inducement, a *plaintiff* must show the elements of fraud and must show that he or she has been fraudulently induced to enter into a binding agreement. Without a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim. In this particular case Defendants: 1) made a material misrepresentation to the Plaintiff; (2) the representation was false at the time of making the statement and or concealed (3) when the representation was made, Defendants representatives knew it was false or concealed, or that they had failed to disclose the true facts, but recklessly concealed those facts for profit; (4) The settlement agreement was presented to the Plaintiff with the intent that he should act upon it; (5) the Plaintiff acted in reliance on the representation by signing the settlement agreement; and (6) the Plaintiff has suffered injury. The injury is discovering that the 2014 Legacy has several mechanic problems that Defendants were fully aware of but not revealed to the Plaintiff. Because the sale of the 2014 Legacy was made under false and misleading inducements to Plaintiff and other consumers, Defendants are also guilty of violating the Business and Professions Codes and the 2014 Legacy should be ordered by the Court to be returned to SOA for a full refund.

---

[8]A representation or concealment must be accomplished with intent to deceive another party thereto, or to induce him to enter into the contract and the action may be either the suggestion, as a fact, of that which is not true, by one who does not believe it to be true or the suppression of that which is true, by one having knowledge or belief of the fact. A fraudulent misrepresentation is one made with the knowledge that it is or may be untrue.

148.    Under Alabama law, a cause of action for fraud requires a plaintiff to establish: 1) a knowingly false misrepresentation by the defendant, (2) made with the intent to deceive or to induce reliance by the plaintiff, (3) justifiable reliance by the plaintiff, and (4) resulting damages. *Service by Medallion, Inc. v. Clorox Co.*, 44 App. 4th 1807, 1816, 52 Cal. Rptr. 2d 650 (1996). A cause of action for negligent misrepresentation is similar, except that an intent to deceive is unnecessary.[9] *Intrieri v. Superior Court,* 117 App. 4th 72, 85-86, 12 Cal. Rptr. 3d 97 (2004). Instead, a *defendant* may be liable for negligent misrepresentation when it makes a false statement without reasonable grounds for doing so. *Id.*

149.    Under Alabama law, there are two species of fraud that can render a contract void and unenforceable. First, a contract obtained through fraud in the inducement can be rescinded for lack of consent. Fraud in the inducement is a subset of the tort of fraud whereby "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which by reason of the fraud is voidable." *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 415, 58 Cal. Rptr. 2d 875, 926 P.2d 1061 (1996). Second, fraud in the factum also vitiates consent, voiding a contract. *People v. Babaali*, 171 Cal. App. 4th 982, 2009 WL 522897, at *1 (Ct. App. 2009). In a fraud in the factum case, the defendant fraudulently induces the victim to consent to a contract through the plaintiff's justifiable ignorance as to the nature of the contract. *Frusetta v. Hauben*, 217 App. 3d 551, 556-57, 266 Cal. Rptr. 62 (1990). "If the signer of a contract misapprehends the terms of a document, then he has not, in fact, assented to its true terms." *Id.* at 557.

---

[9]Business and Professions Code provides: "It is unlawful for any person, firm, corporation, or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate . . . in any . . . publication . . . or in any other manner or means whatever, any statement, concerning such real or personal property or services . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or . . . any such statement as part of a plan or scheme with the intent not to sell such personal property or services . . . so advertised at the price stated therein . . ."

150.    Under Alabama law, a defendant is grossly negligent when it exhibits "the want of even scant care or an extreme departure from the ordinary standard of conduct." *Kearl v. Board of Med. Quality Assurance*, 189 App. 3d 1040, 1052-53, 236. Rptr. 526 (1986). A contracting party cannot exempt itself from liability for gross negligence when doing so would be against public policy.

151.    The Plaintiff is also pleading negligent misrepresentation against Defendants. Taking some of the same elements of fraud into consideration, Defendants: 1) made a representation to the Plaintiff in a transaction in which Defendants has a pecuniary interest; 2) Defendants supplied false and misleading to the Plaintiff during the business transaction and or failed to disclose defects of the 2014 Legacy; 3) the Defendants did not exercise reasonable care or competence in communicating the false and misleading information to the Plaintiff; and again, 4) the Plaintiff suffered pecuniary loss by justifiably relying on the representation.

152.    A consumer may recover actual damages for any unconscionable action or course of action that is the producing cause of the damages. An "unconscionable action or course of action" is defined as an act or practice, which takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

153.    To prove an unconscionable action or course of action, a plaintiff must show that the defendant's acts took advantage of his lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated. The relevant inquiry examines the entire transaction, not just intent. *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985); *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 745 (Tex. App.—Fort Worth 2005).

154.    Plaintiff is also pleading deceptive trade practice claims against Defendants. The Deceptive Trade Practices Act prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce. Plaintiff also pleading a breach of contract claim against Defendants. A breach of contract claim requires 1) the existence of a valid contract; 2) performance or tender of performance; 3) breach of the contract; and 4) damages resulting from the breach. *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239, 70 Cal. Rptr. 3d 667 (2008). "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations." *Id.*

155.    Plaintiff is also pleading common law and constructive fraud. Common law fraud occurs when a defendant evinces an actual intent to deceive, *Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 5 P.3d 940, 944 (Ariz. Ct. App. 2000), while constructive fraud does not require an intent to deceive, but instead arises when a defendant breaches a legal or equitable duty. *Dawson v. Withycombe*, 216 Ariz. 84, 163 P.3d 1034, 1057-58 (Ariz. Ct. App. 2007) (discussing constructive fraud).

> Actual fraud is defined as:
> "Any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:
> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
> 4. A promise made without any intention of performing it; or,
> 5. Any other act fitted to deceive."

156.    Plaintiff is pleading punitive damages against Defendants. Punitive damages are awarded to punish a civil *defendant* and deter similar conduct in the future. Punitive damages are only available when a plaintiff can prove, by clear and convincing evidence that the defendant acted with intent, knowledge, or with an otherwise culpable state of mind. Such a mental state has been frequently described as the "evil mind." The Plaintiff believes he can meet the punitive damage criteria, because the Defendants 1) acted with the intent to injure the Plaintiff; 2) consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to the Plaintiff; 3) Defendants was motivated by spite, actual malice, or intent to defraud; or 4) Defendants acted with conscious and deliberate disregard of the interests and rights of others.

157.    The undisputed facts plainly reflect that Defendants failed to comply reasonably with the agreement but more importantly entered the settlement agreement to fraudulently induce the Plaintiff into signing the agreement.

158.    Defendants breached its written agreement with the Plaintiff by failing to perform, and by providing false and misleading information to the Plaintiff and by failing to disclose defects to the Plaintiff of the 2014 Legacy so he could make an informed decision and or demand to make repairs prior to the expiration of the extended warranty. The foregoing acts described above of the Defendants, taken separately or collectively, constitute a direct and proximate cause of the Plaintiff injuries and damages.

## SEVENTH CAUSE OF ACTION

**COUNT 7.    NEGLIGENT AND NEGLIGENT MISREPESENTATION**

159.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

160.    Defendants owed a duty to the Plaintiff to use reasonable diligence in the advising and or reporting defects in the 2014 Legacy's that they manufactured and sold and or leased to the Plaintiff and other consumers. Defendants had a duty not to misrepresent the quality and reliability of their product in particularly, the 2014 Legacy.

161.    When Defendant SOA made the settlement agreement with the Plaintiff, he accepted the agreement not knowing all of the defects that Defendant SOA knew was most likely wrong with the 2014 Legacy and or most likely to occur with the vehicle. Defendants knew that the 2014 Legacy had defects and they were negligent to place the vehicle into the flow of commerce for consumers to purchase or lease because they were aware of the defects.

162.    Defendants were negligent of one or more of the following negligent acts and/or omissions:

      a).    Failing to advise the Plaintiff that the 2014 Legacy had serious defects, some of which could cause personal injuries to the consumer.

      b).    Failing to provide a list of the Defendant SOA's known defects that consumers who purchased or leased the 2014 Legacy had experienced so that the Plaintiff and other consumers could check and examine the 2014 Legacy for all defects prior to the warranty expiring.

      c).    Failing to be truthful and honest with the Plaintiff, as a consumer and with other consumers that were also swindled;

d).   Failing to abide by Alabama state and federal laws consumer laws;

e).   Defendants were obviously negligent but more importantly they were also clever in their deception to cover up, conceal, and kept secret the defects that knew were surly going to occur, and that they had proven records of in the 2014 Legacy's of the defects—but kept silent for profit and apparently not to have the expense of recalls;

163.   Plaintiff is entitled to compensation for Defendants negligence and negligent misrepresentations as described herein.

## EIGHTH CAUSE OF ACTION

## COUNT 8.   MAGNUSON-MOSS WARRANTY CLAIM

164.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

165.   Plaintiff is asserting a Magnuson-Moss claim against Defendants for breach of implied warranty. Plaintiff may do so even if the seller did not provide a Magnuson-Moss written warranty. A failure by Defendants to comply with the Used Car Rule automatically violates the Magnuson-Moss Warranty Act. The failure came about when the 2014 Legacy that is the basis of this litigation was provided an extended warranty by the Defendants, and at that time, the 2014 Legacy was a used vehicle. Thus, this Court has jurisdiction to decide claims brought under 15 USC §2301 *et seq.*, by virtue of 15 U.S.C. §2301(d)–(a). Plaintiff is suing the Defendants under the Magnuson Act for actual and punitive damages for Defendants breach of implied warranties.

166.    Plaintiff is a consumer as defined in 15 U.S.C. §2301(3).

167.    The aforementioned described motor vehicle, the 2014 Legacy, is a consumer product as defined in 15 U.S.C. §2301(6).

168.    15 U.S.C. §2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. Defendants claimed that the 2014 Legacy was safe and reliable but its ads never mentioned any defects as pled herein, as seen below:

# Subaru Of America, Inc. Launches TV Ad Campaign For All-New Legacy

Subaru's latest campaign arrives safely.

News provided by **Subaru of America, Inc.** Jul 23, 2014, 02:30 ET



CHERRY HILL, N.J., July 23, 2014 /PRNewswire/ -- Subaru of America, Inc. (SOA) has debuted its advertising campaign for the launch of the all-new 2014 Subaru Legacy. The new work positions Legacy with mid-size sedan buyers as a smart alternative to the mainstream choices. The company looks to increase sales of its largest sedan in support of its business goal of a sixth consecutive year of record sales.

All-new 2014 Subaru Legacy national television spot – Jr. Driver. (PRNewsFoto/Subaru of America, Inc.) The three national television spots – "Passengers," "The Fix" and "Jr. Driver" – show how the Subaru brand values of reliability, safety, capability and longevity are important consideration factors to mid-sized sedan buyers. The creative began airing on major television networks in July.

Subaru treads its own path when it comes to advertising, by focusing on what really matters to a car owner: peace of mind. This concept is the overarching theme in the three latest national ads in support of its broader "Love" campaign. The spots are centered around the Subaru Legacy's ability to help the consumer do all the things they enjoy to do.

"Passengers" is available to view on Subaru of America's YouTube channel:

http://subar.us/WmYgUr

In "The Fix," a father finds his own peace of mind when his new Legacy becomes an inventive solution for his son's broken heart. The son arrives on the scene to find his toy car dismantled by the terrain; it is only a moment before his father realizes that his Legacy can be an even better substitute. Demonstrating the all-wheel drive capabilities and superior handling, the Legacy can take on any challenging maneuver the boy throws the driver's way.

"The Fix" is available to view on Subaru of America's YouTube channel:

**About Subaru of America, Inc.**

Subaru of America, Inc. is a wholly owned subsidiary of Fuji Heavy Industries Ltd. of Japan. Headquartered at a zero-landfill office in Cherry Hill, N.J., the company markets and distributes Subaru vehicles, parts and accessories through a network of more than 600 retailers across the United States. All Subaru products are manufactured in zero-landfill production plants and Subaru of Indiana Automotive Inc. is the only U.S. automobile production plant to be designated a backyard wildlife habitat by the National Wildlife Federation. For additional information visit media.subaru.com.

Michael McHale
Subaru of America, Inc.
856-488-3326
mmchale@subaru.com

*SEE SUBARU OF AMERICA, INC BROCHURE FOR THE 2014 LEGACY ANNEXED as EXHIBIT C*

169.    Defendant SOA refused to repair the suspension problem that the Plaintiffs 2014 Legacy needed for repair even though the warranty had not expired for very long and the problem was noticed. It is obvious that the Legacy suspension problem was in existence prior to the warranty being expired, which was a factor when the vehicle was under warranty. Nowhere in the entire brochure, annexed (**Exhibit C**) that Defendants sent out into the flow of commerce does it mention any defects with the 2014 Legacy. In fact on page one, Subaru's slogan is: "*Confidence in Motion,*" which is a false statement in itself. The brochure speaks about the CVT transmission as noted below:

> "There's a sense of satisfaction in doing things differently than the rest. Like building a sedan that offers surefooted handling and refined smoothness. Intelligent engineering, with a Lineartronic® CVT that gives you more performance for less fuel (32 mpg)1, and Subaru Symmetrical AWD, designed for quick response and excellent control . . . These virtues working together harmoniously in the Legacy deliver the confidence to relish every curve when you chase the things that matter most to you."

On the third page of the brochure, Subaru claims that the 2014 Legacy is efficient, and quotes 32 MPG highway, but it does not state anything about the vehicle's excessive oil consumption. Further, the brochure on page 10, it talks about the suspension, but fails to recite problems with the suspension, or that the engine could shut off, however the brochure does cite a "2013 HIS Top Safety Award," which is deceptive. The entire brochure glossy over the problems cited in this petition and on the rear of the brochure it states the words: Responsible and Reliable, which pursuant to this complaint and other complaints, the 2014 Legacy is neither reliable or a responsible choice to any buyer who could purchase other vehicles in a very competitive market place.

170.    As a result of Defendants breaches of implied warranties as set forth in this Complaint, and Defendants failure to remedy same within a reasonable time and without charge to Plaintiff, Plaintiff has suffered the damages enumerated in this Complaint.

171.    As alleged herein, as a direct and proximate result of Defendants breached their warranties and duties. Further, that this Court will rescind the written settlement agreement between the Plaintiff and Defendants.

## NINTH CAUSE OF ACTION

**COUNT 9.    RESCISSION OF THE SETTLEMENT AGREEMENT**

172.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

173.    Pursuant to Alabama statutory law, it provides that concealment, whether intentional or unintentional, and a material breach of the contract entitles the injured party to rescind the contract. Thus, under the statute, negligent or even innocent concealment warrants rescission. A representation or concealment must be accomplished with intent to deceive another party thereto, or to induce him to enter into the contract (settlement agreement) which the action may be either the suggestion, as a fact, of that which is not true, by one who does not believe it to be true or the suppression of that which is true, by one having knowledge or belief of the fact. A fraudulent misrepresentation is one made with the knowledge that it is or may be untrue.

174.    Settlement agreements have the attributes of contracts, and they should be construed as such. See *Ferguson v. Flying Tiger Line, Inc.,* 688 F.2d 1320, 1321-22 & n.1 (9th Cir. 1982); Cf. *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236-37 & n.10, 43 L. Ed. 2d 148, 95 S. Ct. 926 (1975)("consent decrees and orders have many of the attributes of ordinary contracts"); *Brown v. Neeb,* 644 F.2d 551, 557 (6th Cir. 1981).

175.    The rule is contracts that are tainted by mistake, duress, or even fraud are voidable at the option of the innocent party. *See* 1 Restatement (Second) of Contracts § 7, and Comment b (1979); e.g., Ellerin v. Fairfax Sav. Assn., 78 Md. App. 92, 108-109, 552 A.2d 918, 926-927 (Md. Spec. App.), cert. denied, 316 Md. 210, 557 A.2d 1336 (1989). Plaintiff respectfully requests that the settlement agreement signed by the Plaintiff and representatives of SOA is set a-side and voided.

176.    The fact that the contract is voidable rather than void may prove important. For example, an absolutely void contract, it is said, "is void as to everybody whose rights would be affected by it if valid." 17A Am. Jur. 2d, Contracts § 7, p. 31 (1991). Were a former worker's procedurally invalid promise not to sue absolutely void, might it not become legally possible for an employer to decide to cancel its own reciprocal obligation, say, to pay the worker, or to provide ongoing health benefits—whether or not the worker in question ever intended to bring a lawsuit? It seems most unlikely that Congress, enacting a statute meant to protect workers, would have wanted to create—as a result of an employer's failure to follow the law—any such legal threat to all workers, whether or not they intend to bring suit. To find the contract voidable, rather than void, would offer legal protection against such threats.

177.    Hence, the Plaintiff respectfully requests the Court to rescind the settlement agreement between the Plaintiff and the Defendants on the grounds that the agreement was procured by means of fraud rendering it void. Plaintiff knew what he was signing (written settlement agreement) but his consent was induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable. Plaintiff seeks to rescind the settlement agreement under statutory and common-law rules.

59

## TENTH CAUSE OF ACTION

### COUNT 10.    COMMON-LAW FRAUD

178.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

179.    Defendants committed common-law fraud causing Plaintiff to sustain compensable damages. Defendants made material misrepresentations to Plaintiff and other consumers through its advertising campaigns and its brochures which both were placed in the flow of commerce to persuade consumers like the Plaintiff to purchase or lease their products, knowing that the products were defective. Each misrepresentation was made with knowledge of its falsity or was made recklessly, without any knowledge of the truth, and as a positive assertion or carried out to make profits at the consumer's risks. Each of the misrepresentations was made with the intention that it should be acted on by Plaintiff or other consumers. Plaintiff relied on each of the misrepresentations and thereby suffered injury.

180.    The failures by Defendants to disclose material facts include but not limited to the following:

    a).    Failing to disclose to the Plaintiff and other consumers of the defects with the 2014 Legacy;

    b).    Failing to disclose to the Plaintiff of the number of defects that Defendants were aware of regarding the 2014 Legacy when presenting a settlement agreement to the Plaintiff.

    c).    These actions of Defendants were made with the intent that the Plaintiff and other consumers nationwide rely upon it to their detrimental reliance.

181.    On information and belief Defendants made the above-described misrepresentations, concealments and omissions of material facts with knowledge of heir falsity or with reckless disregard of the truth.

182.    The above-described actions were committed by Defendants willfully, wantonly, and with disregard for the truth and the rights of the Plaintiff and other consumers who purchased or leased the 2014 Legacy.

183.    On information and belief Defendants intended that the Plaintiff and other consumers to rely upon the above-described misrepresentations, concealments and omissions.

184.    The Plaintiff was only able to discover these facts after the settlement agreement was signed. It apparent that Defendant had hoped it would wipe away its underhanded conduct, and concealments with the settlement agreement signed by the Plaintiff and Defendants representatives and or agents.

185.    Plaintiff relied on the above-described representations, concealments and omissions of the Defendants, and suffered the damage described in this compliant as a proximate result thereof.

186.    Based on the fraud committed by Defendants, Plaintiff is entitled to, and hereby requests a judgment against Defendants, jointly and severally, for actual damages, exemplary damages, costs, pre-judgment interest, and post-judgment interest, all in amounts to be determined in accordance with applicable law.

## **ELEVENTH CAUSE OF ACTION**

## **COUNT 11.    CONSTRUCTIVE FRAUD**

187.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

188.    Defendants committed constructive fraud against the Plaintiff and other consumers who purchased or leased the 2014 Legacy because: 1). Defendants had a fiduciary or confidential relationship with Plaintiffs that gave rise to a legal or equitable duty; 2) Defendants breached that duty; (3) the breach was intended to deceive Plaintiff and others who purchased and leased the 2014 Legacy, which violates public or private confidences, or injures public interests; and (4) the breach induced detrimental and justifiable reliance. *Dawson*, 163 P.3d at 1057-58 (citing *Lasley v. Helms*, 179 Ariz. 589, 880 P.2d 1135, 1137 (Ariz. Ct. App. 1994), *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 98 Cal.Rptr.2d 176, 184 (Cal. 2000), *In re McDonnell's Estate*, 65 Ariz. 248, 179 P.2d 238, 241 (Ariz. 1947)). Most importantly, no showing of "intent to deceive or dishonesty of purpose" is required. See *Lasley*, 880 P.2d at 1138.

189.    Plaintiff is eligible for punitive damages against Defendants for the following reasons: (1) Defendants acted with the intent to injure Plaintiff and other consumers who purchased or leased the 2014 Legacy; (2) Defendants consciously pursued a course of conduct knowing that it created a substantial risk of significant harm the Plaintiff and others who purchased and or leased the 2014 Legacy; (3) Defendants was motivated by spite, actual malice, or intent to defraud; or (4) Defendants acted with conscious and deliberate disregard of the interests and rights of others.

## TWELFTH CAUSE OF ACTION

### COUNT 12.    VIOLATION OF 42 USC §1981

190.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

191.    Pursuant to 42 USC §1981 the Plaintiff, an African American have a right to enforce a contract just as white citizens. Defendants breached its written settlement agreement with the Plaintiff, which is a contract by not disclosing the defects with the 2014 Legacy's prior to the Plaintiff signing the contract or settlement agreement, and by Defendants failing to repair the suspension that by all reasonable minds and automotive mechanics occurred while the warranty was in affect. And by concealing defects known to Defendant SOA to induce the Plaintiff into signing the written settlement agreement.

192.    Defendant SOA failed to perform the written settlement agreement that was made between the Plaintiff and SOA on or about August 4, 2015. Pursuant to 42 USC §1981, the Plaintiff has a right to enforce contacts and to rescind contracts.

## THIRTEENTH CAUSE OF ACTION

### COUNT 13.    EXEMPLARY DAMAGES AND VICARIOUS LIABILITY

193.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

194.    A principal (Defendants) can be held vicariously liable for the contracts and torts of its agent acting within the scope of the agent's actual authority. Further, Defendants can be held vicariously liable for the actions or non-actions of that of its dealerships, who were told by the Defendants to keep secret the defects regarding the 2014 Legacy's.

195.    Plaintiffs injuries resulted from defendant's Defendants gross negligence, deception, and concealment, which entitle Plaintiff to exemplary damages.

196.    Individuals acting on behalf of the Defendants as agents and employees and through Defendants dealerships had a principal-agent relationship. An agent is a person who is authorized by the principal to transact business or manage some affair of the principal's behalf. *Paragon Indus. Applications, Inc. v. Stan Excavating, LLC*, 432 S.W.3d 542, 548 (Tex.App.—Texarkana 2014).

197.    A manager of Defendants car dealership, or a customer service person employed by the Defendants would be considered as an agent, and generally speaking they are subject to the principal's right of control. *Royal Mortg. Corp. v. Montaue*, 41 S.W.3d 721, 733 (Tex.App.—Fort Worth 2001, no pet.). Some of the employees or agents may be considered as a sub-agent, because these agents would be delegated to perform an act for the principal. *Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 277 (Tex.2012). An agent is authorized to act on behalf of the principal when the principal has granted the agent authority to act and there is a meeting of the minds about the nature of their relationship. These agents had express authority to represent the principal.

198.    The agents had actual authority to execute the settlement agreement contract on behalf of the principal Defendants. And the agent was acting within the scope of its authority. *Weatherly Trust*, 855 S.W.2d 826, 837 (Tex.App.—Amarillo 1993, writ denied). A principal is liable for the physical harm (emotional distress) and other harmed caused by the intentional or negligent conduct of its agent.

199.    Plaintiff seeks exemplary damages against Defendants through its vicarious liability because these offenses were performed within the scope of the agents employment, whether full-time employees or outside contract employment of legal counsel or both, their actions were recklessly tolerated by high managerial personnel of Defendants, the CEO, president, and vice presidents, and of any of its employees and or dealerships.

### FOURTEENTH CAUSE OF ACTION

### COUNT 14.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

200.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

201.    Plaintiff alleges that Defendants conduct constitutes unlawful, "Intentional Infliction of Emotional Distress" in the following respects:

202.    Defendants conduct as pled herein was intentional emotional distress.

203.    Defendants conduct went beyond all possible bounds of decency and was intended to, and did in fact; cause emotional distress and the other injuries complained of throughout this Complaint by the Plaintiff and incorporated herein by reference. There are two major costs for most ordinary people, buying a home and purchasing a new car. Both purchases can be emotionally difficult. It's emotionally difficult to know if a vehicle will perform or not perform because of a hidden problem that the consumer (Plaintiff) may not be aware of.

204.    Defendants' conduct would be regarded as atrocious and utterly intolerable in a civilized community to take advantage of ordinary people's trust for profit.

205.    Defendants conduct was a proximate cause of the Plaintiff's injuries and damages as set forth herein.

## DAMAGES

206.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages. Evidence clearly demonstrates that Defendants has committed deceptive and unfair trade practices and other causes of actions that the Plaintiff has pled herein.

207.    Plaintiff suffered mental anguish on account of Defendants conduct. Plaintiffs is seeking an order from this Court decreeing that Defendants has violated the settlement agreement, and therefore rescind the settlement agreement that was signed by the Plaintiff and a representative from SOA. That Defendants be ordered to compensate Plaintiff for damages on account of their deceptive behavior, including mental anguish separately, in the amount of $400,000.00.

208.    In addition, Plaintiff by this action, seeks compensatory damages, damages for deceptive trade practices, expert fees, cost, interest, punitive damages, conspiracy, discrimination, and other causes of actions pled herein and for all other monies and damages to which he may be entitled and:

- Attorneys' fees for preparation and trial;
- Attorneys' fees if there is to be an appeal to the Court of Appeals;
- Attorneys' fees if there is to be an appeal to the Supreme Court of the U.S;
- Incidental damages;
- That Defendants be made to perform as originally agreed to;
- Past mental anguish;
- Future and past emotional distress;

66

- Damages for violation of contract;
  1. Trebled damages;
  2. Plaintiff respectfully requests that the Court grant additional damages as already pled herein of: Fraud, Misrepresentation, Deceptive and Unfair Trade Practices, Discrimination, and injunctive relief and other causes pled herein.

## ATTORNEYS' FEES, COSTS & INTEREST

209.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

210.    Plaintiff hereby sues for the recovery reasonable attorneys' fees, costs of court and pre-and post-judgment interest at the highest rates to which he is entitled.

## REQUEST FOR JURY TRIAL

211.    Plaintiff hereby requests a jury trial on all matters set forth in his original petition as pled to this Honorable Court and on all issues so triable.

## PARYER FOR RELIEF

212.    Plaintiff prays for a judgment against Defendants and its agents and representatives and each of them as follows:

1.    Special damages for Plaintiff in an amount to be determined at trial;

2.    General damages for Plaintiff in an amount to be determined at trial;

3.    Punitive Damages in an amount to be determined at trial;

4.    Cost of suit;

5.    Attorney fees for preparation and trial;

6.    Attorney fees if there is to be an appeal to the U.S. Supreme Court;

7.    Incidental damages;

8.    An order that Defendants be made to performed as pled herein;

9.    Past and future emotional distress;

10.    Trebled damages;

11.    Prejudgment interest;

12.    For such other and further relief as the court deems just and proper.

## **PRAYER**

213.    WHEREFORE PREMISES CONSIDERED, Plaintiff hereby prays that Defendants be served with summons; be cited to appear and answer herein; and that after a trial of this matter that Plaintiff obtain an order of judgment against the Defendants as prayed for.

214.    That Plaintiff be awarded compensatory damages, reasonable attorneys' fees, costs of court and pre-judgment and post-judgment interest at the highest rates to which he is entitled to receive; and for such other proper relief to which Plaintiff is entitled. Additionally Plaintiff pray that:

**A**.    The Court rules that Plaintiff is the prevailing party in this case and award attorneys' fees and costs, pursuant to federal law, as noted against all defendants;

**B**.    Award damages to Plaintiff for the violations of his rights as prayed for herein;

**C**.    Award Pre-and post-judgment interest;

**D**.    Award Punitive damages as prayed;

**E**.    Grant such other and further relief as appears reasonable and just, to which Plaintiff shows himself entitled.

Respectfully submitted,

Eric Von Drake
7956 Vaughn Road
Selma, AL 36702
912-281-7100
legal.litigation.org@gmail.com

# Exhibit "1"

## Declaration of Eric Drake

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA


**ERIC VONDRAKE**                      **CASE NUMBER:** _____

    *Plaintiff*

**VS**

**FUJI HEAVY INDUSTRIES LTD.**
**AND SUBARU OF AMERICA, INC.**

    *Defendants*

### <u>DECLARATION OF ERIC VONDRAKE</u>

I, Eric Drake, declare as follows:

1.  I am a licensed minister for over 33-years. I make this declaration based upon my personal knowledge and could and would testify thereto if called as a witness.

2.  I submit this affidavit in support of Plaintiff's Complaint. I am testifying in regards to a 2014 Subaru, vehicle identification number: 4S3BMBJ69E3012648.

3.  I have witnessed the back-up camera malfunction more than 20 times. The camera will not show a picture for days, and suddenly without any repairs, the camera will operate as it was designed. The 2014 Subaru, which is made the basis of this lawsuit, has been scheduled for repair of the back-up camera on numerous occasions, but unfortunately the 2014 Subaru back-up camera would start working again before a technician could inspect and diagnose the problem with the 2014 Legacy's back-up camera. The dealerships have been unable to duplicate this problem.

4.  In the very beginning, the 2014 Legacy had a problem of shutting off when the vehicle was put in reverse. Likewise, the dealerships have been also unable to duplicate this problem.

1

5.     There has been excessive wear on the inside of several sets of tires over the life of the vehicle. This has caused the purchase of an excessive number of new tires to be purchased along with 4-wheel alignments. This excessive wear was evident from the very beginning of ownership.

6.     The 2014 Legacy also consumes oil at an excessive rate, even after regular and between oil changes. Affiant was informed on July 9, 2018 that the engine of the 2014 Legacy needs to be sealed to stop the oil leaks. Presently, the Legacy sounds more like a diesel engine than a gasoline engine. The estimate for repair is annexed as **Exhibit** "**A**." On December 27, 2018 affiant was informed by an authorized Subaru dealership that the transmission in the 2014 Legacy will require expensive repairs. *See* **Exhibit** "**B**."

7.     In speaking to Subaru agents or representatives regarding the settlement agreement, affiant was not informed at any point that there has been a history of problems with oil consumption with 2014 Legacy.

8.     In speaking to Subaru agents or representatives regarding the aforementioned settlement agreement annexed to affiant's declaration, affiant was not informed at any point that there was a history of problems with the transmissions on the 2014 Legacy.

9.     In speaking to Subaru agents or representatives regarding the aforementioned settlement agreement annexed to affiant's declaration, affiant was not informed at any point that there has been a history of problems with uneven wear of tires on 2014 Legacy.

10.     The 2014 Legacy had already had the navigation unit replaced once. However, the replacement navigation unit has not been working properly.

2

11.    More than 30 times since owing the vehicle, the 2014 Legacy has shut off after it was turned on and put in reverse. The dealerships were unable to duplicate this problem.

12.    Affiant believed the television commercials, Ads on the Internet, and other publications, and the words written on Subaru's brochure regarding the 2014 Subaru Legacy being a reliable, safe, and efficient vehicle. However, the affiant is now convinced that the 2014 Legacy, which is the subject of this litigation, is not reliable, safe, or efficient as advertised by Subaru of America, Inc.

FURTHER AFFIANT SAYETH NOT.

I declare, that the foregoing is true and correct.

Executed on this the _____3rd_____ of July, 2019.

Respectfully submitted,

Eric Von Drake
7956 Vaughn Rd
Selma, AL 36702
912-281-7100
legal.litigation.org@gmail.com

3

# Exhibit "A"

**Authorized Subaru Dealership's
Estimate of Repairs of 2014 Legacy's Engine
Because of Defects with 2014 Legacy's**



## Original Customer Requests

The following is what you requested we perform or investigate regarding your vehicle:

✓ A. IT IS OUR GOAL AT FIVE STAR SUBARU TO PROVIDE OUR GUEST WITH AN EXPERIENCE THAT FAR EXCEEDS YOUR EXPECTATIONS. IF YOU DID NOT RECEIVE THE 5 STAR SUBARU EXPERIENCE, PLEASE CONTACT OUR SERVICE MANAGER (MARCUS PROCTER) AT MPROCTER@SUBARUGRAPEVINE.COM

✓ B. COMPLEMENTARY WORLD CLASS SUBARU 27 POINT INSPECTION

✓ C. OWNER STATES ENGINE LEAKING OIL, CHECK AND ADVISE (ENGINE LEAKING FROM CAM CARRIERS)

✓ RESEAL ENGINE



## Recommended Services

Our technicians recommend the following services for your vehicle.

| Original Customer Requests | Status | Cost | Deferred | Approved |
|---|---|---|---|---|
| A. IT IS OUR GOAL AT FIVE STAR SUBARU TO PROVIDE OUR GUEST WITH AN EXPERIENCE THAT FAR EXCEEDS YOUR EXPECTATIONS. IF YOU DID NOT RECEIVE THE 5 STAR SUBARU EXPERIENCE, PLEASE CONTACT OUR SERVICE MANAGER (MARCUS PROCTER) AT MPROCTER@SUBARUGRAPEVINE.COM | | $0.00 | | X |
| B. COMPLEMENTARY WORLD CLASS SUBARU 27 POINT INSPECTION | | $0.00 | | X |
| C. OWNER STATES ENGINE LEAKING OIL, CHECK AND ADVISE | | $0.00 | | X |
| RESEAL ENGINE (ENGINE LEAKING FROM CAM CARRIERS) | Fail | $2,749.20 | | |
| Subtotal | | $2,749.20 | | |

| Totals, Taxes and Fees | Cost | Deferred | Approved |
|---|---|---|---|
| Estimate Subtotal | $2,749.20 | $0.00 | $0.00 |
| Shop Fee | $40.00 | | $0.00 |
| Tax | $230.11 | | $0.00 |
| **Estimate Total** | **$3,019.31** | | **$0.00** |

# Exhibit "B"

**Authorized Subaru Dealership's Estimate of Repairs of 2014 Legacy's Transmission**

# SUBARU

| Recommendation #6963644 (1 of 3) | | 12/26/18 |
|---|---|---|
| **RO (TAG):** | 725039 \| Tag: TB501 | |
| **Customer:** | DRAKE,ERIC VON | |
| **Vehicle:** | 2014 SUBA LEGACY (4S3BMBJ69E3012648) | |
| **Technician:** | Cary Berkman | |
| **Advisor:** | Oliver Ramos | |
| **Orig. Concern:** | CUSTOMER STATES AT TEMP LIGHT IN FLASHING AND BRAKE LIGHT IS FLASHING | |
| **Recommendation:** | P0971, VALVE BODY AND HARNESS ISSUES. NEEDS VALVE BODY, TOP HARNESS, CVT FLUSH | |

## Price Quote

| | **Total:** | **$1,933.07** |
|---|---|---|

*Price is valid for 30 days from date of quote.*

# Exhibit "C"

**Brochure of 2014 Subaru Legacy
Produced By Subaru of America**









## Efficient

Legacy lets you experience performance and save money at the same time with up to 32 highway MPG[1] when you opt for the available Lineartronic® CVT.

## Sporty

A choice of refined and thrilling engines. Precise rack-and-pinion steering. Independent front and double-wishbone rear suspension. They combine with the grip of Subaru Symmetrical All-Wheel Drive to deliver a performance that's smooth, powerful and responsive.

## Comfortable

A spacious cabin with all of the technology to make every trip enjoyable, the Legacy is built to ease the burden of every commuter's minute and increase the driver's enjoyment of every open mile.

## Protective

From the available EyeSight® Driver-Assist System[2] to its comprehensive accident avoidance and protection engineering, there are many safety features that make Legacy a 2013 IIHS Top Safety Pick Plus and Top Safety Pick for eight years running (2006–2013).[3]



1. EPA-estimated fuel economy for 2014 Legacy 2.5i CVT. Actual mileage may vary.
2. EyeSight is a driver-assist system which may not operate optimally under all driving conditions. The driver is always responsible for safe and attentive driving. System effectiveness depends on many factors such as vehicle maintenance, weather and road conditions. See Owner's Manual for complete details on system operation and limitations. Please remember to turn off EyeSight when in a car wash to avoid damage.
3. Top Safety Pick Plus ratings result from good performance in the overlapped front, side impact, rear crash and rollover evaluations, plus basic performance in the new small overlap front test. Government 5-Star Safety Ratings are part of the National Highway Traffic Safety Administration's New Car Assessment Program. For more information on crash test ratings, go to safercar.gov.









**Connect your drive in real time.**

### Interior Features

Making every drive easier is the goal of what's inside a Legacy. Bluetooth® wireless capability allows you to make calls hands-free and stream music from your Bluetooth®-enabled phone or MP3 player. And because being comfortable is just as important as being connected, your passengers will appreciate the spacious headroom and legroom located throughout.

There's also an available voice-activated touch-screen navigation system to help you find your way. It includes the Aha™ connected service¹ via the Subaru STARLINK™ system with seamless access to web content such as podcasts, internet radio, audiobooks and personalized restaurant and hotel searches.







Connect your drive
in real time.

### Rear Seat Entertainment System

Help everyone enjoy the drive with the accessory Rear Seat Entertainme
It includes two 7-inch LCD monitors and two DVD players integrated rig
front-seat headrests. The dual-screen system allows rear passengers t
movies, listen to music or play games either simultaneously or independ
each other. There's also a remote control and wireless headphones[1] for
convenience. Plus, it's iPod[2] and MP3 compatible, and includes an A/V j
for game consoles and more.

1 Headphones are for rear passengers use only.
2 iPod au. essory is not included.





Comfortable. Refined. **Accommodating.**

Legacy 3.6R Limited with Off-Black Leather and optional equipment.



There's more to Legacy than meets the eye.



**Pre-Collision Braking**

A driver ahead unexpectedly hits the brakes or cuts you off. EyeSight® warns you, applies brakes to help avoid a collision, and at lower speeds can even help you stop your Subaru.



**Adaptive Cruise Control**

Traffic doesn't always flow, so EyeSight® doesn't only keep a set speed. The system looks ahead and helps automatically adjust to keep your distance, even in stop-and-go highway traffic.



**Pre-Collision Throttle Management**

You put the car in Drive instead of Reverse. EyeSight® cuts power when it sees an object in your path to help you avoid accelerating into it.



**Lane Departure and Sway Warning**

You accidentally drift to the edge of your lane and begin to cross into another. EyeSight® watches for lane markers and chimes to warn you before you leave yours.

Legacy 2.5i Limited in Venetian Red Pearl with optional equipment.







"If you're looking for a sedan as well regarded for its safety as its comfort, the 2013 Subaru Legacy deserves a long look. A huge back seat and cavernous trunk are definite pluses, but it's the Legacy's sure-footed standard AWD, impressive crash test ratings and excellent fuel economy that we love."[1]
— KBB.com, 2013 Legacy Review

"Subaru has racked up more endorsements by independent arbiters of automotive quality and safety than just about any other manufacturer."[2]
— FORTUNE Magazine, December 3, 2012

Legacy 2.5i Limited in Ice Silver Metallic with optional and accessory equipment.

## 2014 Legacy | Trim Levels



### 2.5i

- 173-hp 2.5-liter 4-cylinder SUBARU BOXER® engine
- Subaru Symmetrical All-Wheel Drive
- 6-speed manual transmission or optional Lineartronic® CVT (Continuously Variable Transmission) with manual-mode paddle shifters
- 16-inch steel wheels with covers
- Cloth upholstery
- Silver metallic interior trim
- 6-way manually adjustable driver's seat, 4-way manually adjustable front-passenger's seat
- 4-speaker single-CD audio system with Bluetooth® connectivity, 3.5-mm auxiliary jack and USB port/iPod® control
- Manually adjustable CFC-free air conditioning system with air filtration
- Auto on/off headlights



### 2.5i Premium

Includes 2.5i key features and adds:
- Lineartronic® CVT (Continuously Variable Transmission)
- 17-inch aluminum-alloy wheels
- Body-color side mirrors
- Bright-finish exhaust outlet
- 10-way power adjustable driver's seat, 4-way manually adjustable front-passenger's seat
- Leather-wrapped steering wheel and shifter handle
- 6-speaker single-CD audio system with 4.3-inch LCD display, HD Radio®, USB port/iPod® control, SiriusXM® Satellite Radio, Bluetooth® audio streaming and hands-free phone connectivity, 3.5-mm auxiliary jack and Rear-Vision Camera
- Driver's auto-up/down power window
- All-Weather Package



### 2.5i Sport

Includes 2.5i Premium key features and adds:
- 18-inch aluminum-alloy wheels with gray machine finish
- Fog lights
- Carbon fiber-patterned accent interior trim
- Power tilt sliding-glass moonroof
- Auto-dimming rearview mirror with HomeLink®
- Rear-Vision Camera



### 2.5i Limited

Includes 2.5i Premium key features and adds:
- Fog lights
- Leather-trimmed upholstery
- Woodgrain-patterned accent interior trim
- 10-way power adjustable driver's seat, 4-way power adjustable front-passenger's seat
- Dual-zone automatic climate control system with center console rear vents
- Single-CD premium audio system with 4.3-inch LCD display, 9 Harman Kardon speakers, including subwoofer, 440-watt Harman Kardon amplifier, HD Radio®, USB port/iPod® control, SiriusXM® Satellite Radio, Bluetooth® audio streaming and hands-free phone connectivity, 3.5-mm auxiliary jack and Rear-Vision Camera
- Electroluminescent gauges with LCD color display



### 3.6R Limited

Includes 2.5i key features and adds:
- 256-hp 3.6-liter 6-cylinder SUBARU BOXER® engine
- Subaru Symmetrical All-Wheel Drive
- 5-speed automatic transmission with manual-mode paddle shifters
- 17-inch aluminum-alloy wheels
- Fog lights
- Dual bright-finish exhaust outlets
- Body-color side mirrors
- Leather-trimmed upholstery
- Woodgrain-patterned accent interior trim
- 10-way power adjustable driver's seat, 4-way power adjustable front-passenger's seat
- Single-CD premium audio system with 4.3-inch LCD display, 9 Harman Kardon speakers, including subwoofer, 440-watt Harman Kardon amplifier, HD Radio®, USB port/iPod® control, SiriusXM® Satellite Radio, Bluetooth® audio streaming and hands-free phone connectivity, 3.5-mm auxiliary jack and Rear-Vision Camera
- Dual-zone automatic climate control system with center console rear vents
- Driver's auto-up/down power window
- Electroluminescent gauges with LCD color display
- All-Weather Package

## 2014 Legacy | Specifications

| Engine and Drivetrain | | 2.5i | 3.6R |
|---|---|---|---|
| Power | Torque | 2.5-liter DOHC aluminum-alloy 16-valve 4-cylinder horizontally opposed SUBARU BOXER® engine with Active Valve Control System. 173 hp @ 5,600 rpm | 174 lb-ft @ 4,100 rpm | ● | — |
| | 3.6-liter DOHC aluminum-alloy 24-valve 6-cylinder horizontally opposed SUBARU BOXER® engine with Dual Active Valve Control System. 256 hp @ 6,000 rpm | 247 lb-ft @ 4,400 rpm | — | ● |
| Manual Transmission | Fully synchronized 6-speed manual with Hill Holder®. 2.5i: Standard. 2.5i Premium, 2.5i Sport and 2.5i Limited: Not Available. | ● | — |
| Automatic Transmission | Lineartronic® CVT (Continuously Variable Transmission) with Adaptive Control, Hill Holder® and 6-speed manual mode with paddle shifters. 2.5i: Optional. 2.5i Premium, 2.5i Sport and 2.5i Limited: Standard. | ● | — |
| | Standard 5-speed automatic with Hill Holder®, manual mode, paddle shifters and downshift rev-matching control. | — | ● |
| CA Emissions | LEV2/ZEV¹ | ULEV2 |  |

### Traction and Stability

| | | 2.5i | 3.6R |
|---|---|---|---|
| All-Wheel Drive type | Subaru Symmetrical All-Wheel Drive | ● | ● |
| Vehicle Dynamics Control (VDC) | VDC electronic stability control uses sensors which continuously monitor wheel speeds, steering angle, brake pressure, vehicle yaw rate and lateral g-forces. If VDC detects a difference between the driver's intended path and the one the vehicle is actually taking, VDC applies braking power and/or reduces engine torque to help correct vehicle path. | ● | ● |
| Traction Control System (TCS) | VDC also incorporates an all-wheel, all-speed traction control system which senses a loss of traction and applies braking force to the slipping wheel or wheels as necessary to maintain vehicle motion. | ● | ● |

### Fuel

| | | 2.5i | 3.6R |
|---|---|---|---|
| Fuel Economy | city/highway/combined³ | Manual 21/29/24 mpg CVT 24/32/27 mpg | 18/25/20 mpg |
| Fuel Requirement | Unleaded gasoline (87 octane) | ● | ● |
| Fuel Capacity | 18.5 gallons | ● | ● |

### Chassis

| | | 2.5i | 3.6R |
|---|---|---|---|
| Steering | Quick-ratio power-assisted rack-and-pinion. Turning circle 36.8 feet | ● | ● |
| Suspension | 4-wheel independent. Front: MacPherson strut type. Stabilizer bar. Rear: Double-wishbone. Stabilizer bar. | ● | ● |
| Brakes | 4-wheel disc. 2.5i, 2.5i Premium, 2.5i Sport and 2.5i Limited: ventilated front. 3.6R Limited: ventilated front and rear. 4-channel, 4-sensor ABS with Electronic Brake-force Distribution (EBD) | ● | ● |

## 2014 Legacy | Specifications

| Chassis (continued) | | 2.5i | 3.6R |
|---|---|---|---|
| Brake Discs (front/rear) | 2.5i, 2.5i Premium, 2.5i Sport and 2.5i Limited: 11.6 inches/11.3 inches 3.6R Limited: 12.4 inches/11.4 inches | ● | ● |
| Brake Assist | When emergency braking is detected by how quickly the brake pedal is pressed, maximum brake pressure is immediately applied. | ● | ● |
| Brake Override System | If both brake and accelerator pedals are pressed simultaneously, the system reduces the operation of the accelerator pedal to help prevent unintentional vehicle acceleration. | ● | ● |

### Wheels and Tires

| | | 2.5i | 3.6R |
|---|---|---|---|
| Wheels | 2.5i: 16 x 6.5-inch steel with wheel covers. 2.5i Premium and Alloy Wheel Package: 17 x 7.5-inch 5-split-spoke aluminum-alloy. Silver finish. 2.5i Sport: 18 x 7.5-inch 5-split-spoke aluminum-alloy. Gray with machine finish. | ● | — |
| | 2.5i Limited and 3.6R Limited: 17 x 7.5-inch 5-split-spoke aluminum-alloy. Machine finish. | ● | ● |
| Tires | 2.5i: 205/60 R16 91V All-season. 2.5i Premium, 2.5i Limited and Alloy Wheel Package: 215/60 R17 96V All-season. 2.5i Sport: 225/45 R18 91V All-season. | ● | — |
| | 3.6R Limited: 225/60 R17 93V All-season. | — | ● |
| Spare Tires | Temporary use T135/80 R16 | ● | — |
| | Temporary use T135/70 R17 | — | ● |



● Standard    ○ Optional    — Not available

21 | 2014 Legacy

## 2014 Legacy | Equipment

| Exterior | 2.5i | 2.5i Premium | 2.5i Sport | 2.5i Limited | 3.6R Limited |
|---|---|---|---|---|---|
| Projector-beam low-beam and multireflector high-beam headlights | ● | ● | ● | ● | ● |
| Fog lights | ◨ ○ | ◨ | ● | ● | ● |
| Black folding side mirrors | ● | — | — | — | — |
| Body-color folding side mirrors | — | ● | ● | ● | ● |
| Heated side mirrors and windshield wiper de-icer (All-Weather Package) | — | ● | ● | ● | ● |
| Single bright-finish exhaust outlet | ● | ● | ● | ● | — |
| Dual bright-finish exhaust outlets | — | — | — | — | ● |
| Power tinting/auto-dimming rearview mirror (98% UV light reducing) | — | ○¹ | ● | ○¹ | ○¹ |

### Seating and Trim

| | 2.5i | 2.5i Premium | 2.5i Sport | 2.5i Limited | 3.6R Limited |
|---|---|---|---|---|---|
| 6-way manually adjustable driver's seat, 4-way manually adjustable front-passenger's seat | ● | — | — | — | — |
| 10-way power adjustable driver's seat with power adjustable lumbar support, 4-way manually adjustable front-passenger's seat | — | ● | ● | — | — |
| 10-way power adjustable driver's seat with power adjustable lumbar support, 4-way power front-passenger's seat | — | — | — | ● | ● |
| Heated front seats (All-Weather Package) | — | ● | ● | ● | ● |
| 60/35-split flat-folding rear seatback | ● | ● | ● | ● | ● |
| Leather-wrapped steering wheel and shifter handle | — | ● | ● | ● | ● |
| Cloth upholstery | ● | ● | ● | — | — |
| Leather-trimmed upholstery | — | — | — | ● | ● |
| Silver metallic accent trim on doors and console | ● | ● | ● | — | — |
| Carbon-fiber-patterned accent trim on doors and console | — | — | — | ● | — |
| Woodgrain-patterned accent trim on doors and console | — | — | — | ● | ● |

### Convenience Features

| | 2.5i | 2.5i Premium | 2.5i Sport | 2.5i Limited | 3.6R Limited |
|---|---|---|---|---|---|
| Electronic parking brake with Hill Holder® function | ● | ● | ● | ● | ● |
| Rear-Vision Camera | — | ○¹ | ● | ○¹ | ● |
| Auto-on/off headlights | ● | ● | ● | ● | ● |
| Auto-dimming rearview mirror with HomeLink® | — | ○¹ | ● | ○¹ | ○¹ |
| Driver's auto-up/down power window | — | ● | ● | ● | ● |
| Electronic cruise control | ● | ● | ● | ● | ● |
| 3-spoke steering wheel with audio, cruise control and Bluetooth® buttons | ● | — | — | — | — |
| Leather-wrapped 3-spoke steering wheel with audio system, Bluetooth®, cruise control or (if equipped) EyeSight® adaptive cruise control buttons | — | ● | ● | ● | ● |
| Automatic transmission or Lineartronic® CVT transmission paddle shifters | ○ | ● | ● | ● | ● |
| Manually adjustable tilt/telescoping steering column | ● | ● | ● | ● | ● |
| 8 cup holders | ● | ● | ● | ● | ● |
| Overhead console with dual maplights | ● | ● | ● | ● | ● |

### Audio System

| | 2.5i | 2.5i Premium | 2.5i Sport | 2.5i Limited | 3.6R Limited |
|---|---|---|---|---|---|
| 4-speaker single-CD audio system with USB port/iPod® control, Bluetooth® audio streaming and hands-free phone connectivity, and 3.5-mm auxiliary jack | ● | — | — | — | — |
| 6-speaker single-CD audio system with 4.3-inch LCD display, HD Radio®, USB port/iPod® control, SiriusXM® Satellite Radio®, Bluetooth® audio streaming and hands-free phone connectivity, 3.5-mm auxiliary jack and Rear-Vision Camera | — | ● | ● | — | — |
| Single-CD premium audio system with 4.3-inch LCD display, 9 Harman Kardon speakers, including subwoofer, 440-watt Harman Kardon amplifier, HD Radio®, USB port/iPod® control, SiriusXM® Satellite Radio®, Bluetooth® audio streaming and hands-free phone connectivity, 3.5-mm auxiliary jack and Rear-Vision Camera | — | — | — | ● | ● |

### Climate Control

| | 2.5i | 2.5i Premium | 2.5i Sport | 2.5i Limited | 3.6R Limited |
|---|---|---|---|---|---|
| Manually adjustable CFC-free air-conditioning system with rotary controls for temperature and 4-speed fan | ● | ● | ● | — | — |
| Dual-zone automatic digital climate control system with controls for temperature, 6-speed fan, airflow direction, dual-zone lockout, CFC-free air conditioning and center console rear vents | — | — | — | ● | ● |

## 2014 Legacy | Equipment

| Instrumentation | 2.5i | 2.5i Premium | 2.5i Sport | 2.5i Limited | 3.6R Limited |
|---|---|---|---|---|---|
| Analog speedometer, tachometer, "eco" fuel economy and fuel level gauges | ● | ● | ● | — | — |
| Analog speedometer, tachometer, coolant temperature and fuel level gauges, LCD color display with "eco" fuel economy gauge and (if equipped) EyeSight® system functions | — | ○¹ | — | ● | ● |
| Multifunction display with driving range, average fuel economy, clock and ambient temperature | ● | ● | ● | ● | ● |

### Security

| | 2.5i | 2.5i Premium | 2.5i Sport | 2.5i Limited | 3.6R Limited |
|---|---|---|---|---|---|
| Keyless entry system with answer-back electronic chirp | ● | ● | ● | ● | ● |
| Antitheft security system with engine immobilizer | ● | ● | ● | ● | ● |

### Safety

**ACTIVE**

| | 2.5i | 2.5i Premium | 2.5i Sport | 2.5i Limited | 3.6R Limited |
|---|---|---|---|---|---|
| Subaru Symmetrical All-Wheel Drive (AWD) | ● | ● | ● | ● | ● |
| Vehicle Dynamics Control (VDC) | ● | ● | ● | ● | ● |
| Traction Control System (TCS) | ● | ● | ● | ● | ● |
| 4-wheel antilock braking system (ABS) with Electronic Brake-force Distribution (EBD) | ● | ● | ● | ● | ● |
| Brake Assist | ● | ● | ● | ● | ● |
| Brake Override System | ● | ● | ● | ● | ● |
| EyeSight® Driver-Assist System | — | ○ | — | ○ | ○ |
| Daytime Running Lights (DRL) | ● | ● | ● | ● | ● |
| Tire Pressure Monitoring System (TPMS) | ● | ● | ● | ● | ● |

**PASSIVE**

| | 2.5i | 2.5i Premium | 2.5i Sport | 2.5i Limited | 3.6R Limited |
|---|---|---|---|---|---|
| Driver's and front-passenger's front airbags (SRS)¹ | ● | ● | ● | ● | ● |
| Subaru advanced frontal airbag system (SRS)¹ | ● | ● | ● | ● | ● |
| Seat-mounted front side-impact airbags (SRS)¹ | ● | ● | ● | ● | ● |
| Side-curtain airbags protecting front and rear outboard occupants (SRS)¹ | ● | ● | ● | ● | ● |
| Whiplash-protection front seats | ● | ● | ● | ● | ● |
| Height-adjustable front-seat head restraints | ● | ● | ● | ● | ● |
| Height-adjustable 3-point front seatbelts with pretensioners and force limiters | ● | ● | ● | ● | ● |
| 3-point seatbelts at all rear seating positions | ● | ● | ● | ● | ● |
| LATCH system: Lower Anchors and Tethers for Children | ● | ● | ● | ● | ● |

### Optional Equipment

| | 2.5i | 2.5i Premium | 2.5i Sport | 2.5i Limited | 3.6R Limited |
|---|---|---|---|---|---|
| EyeSight® Driver-Assist System¹: Pre-Collision Braking System, Pre-Collision Throttle Management, Lane Departure and Sway Warning, Adaptive Cruise Control | — | ○¹² | — | ○²¹ | ○²¹ |
| Power Moonroof Package (Power tinting/auto-dimming rearview mirror (98% UV light reducing) with dimming rearview mirror with HomeLink® and Rear-Vision Camera | — | ○ | ● | ○ | ○ |
| Navigation System Package: Voice-activated 7-inch high-resolution touch-screen GPS navigation system with Subaru STARLINK™ system with Aha™ connected service¹¹, SiriusXM® Satellite Radio® and NavTraffic®, USB port/iPod® control, Bluetooth® audio streaming and hands-free phone connectivity, 3.5-mm auxiliary jack, Rear-Vision Camera, and 9 Harman Kardon speakers and amplifier (2.5i Limited and 3.6R Limited only) | — | ○¹ | ○ | ○¹ | ○¹ |
| Alloy Wheel Package: 17-inch alloy wheels and fog lights | ○ | ● | ● | ● | ● |
| Lineartronic® CVT (Continuously Variable Transmission) | ○ | ● | ● | ● | ● |

● Standard    ○ Optional    — Not available    ◨ available (dealer-installed accessory)

Information Provided by DEALER

## 2014 Legacy | Accessories



**Crossbar Set Fixed — Sedan.** May be used in conjunction with most Genuine Subaru roof attachments and carriers. Additional mounting clamps required.



**All-weather Floor Mats.** Custom-fitted, heavy-gauge protective mats. Helps protect vehicle's carpet from sand, dirt and moisture.
(Not intended for use on top of carpeted floor mats.)



**Trunk Tray.** Helps protect trunk area from stains and dirt while providing a surface that helps reduce shifting of cargo while driving.



**Body Side Moldings.** Attractive color-matched moldings coordinate with the styling of the vehicle, while helping to protect doors from unsightly dings.



**Trunk Spoiler.** Sleek, low-profile design adds just the right amount of attitude to your Legacy. Comes pre-painted and ready to install.

**Auto-dimming Mirror with** Compass and **HomeLink®.** Mirror darkens when headlights are detected from behind the vehicle. Includes a compass and three HomeLink buttons that are programmable for most garage-door openers and other HomeLink-compatible devices.



**Fog Lights.** Cast a low and wide beam of light to enhance vision in inclement weather.



**Side Window Deflectors.** Let the fresh air in while helping to keep the weather out. Deflector design includes integrated chrome insert to match window frame trim.
(Side Window Deflectors may not be legal in all states. Please check the laws of your state.)



**Splash Guards.** Help protect the vehicle's paint finish from stones and road grime.



**Chrome Trunk Trim.** Chrome trim replaces the painted panel for the perfect custom touch.



**Remote Engine Starter.** Allows vehicle to be started by pushing a button from the convenience of home or office (up to 400 feet away) depending on obstructions) so that the vehicle interior is more comfortable upon entry. The start/stop button blinks to confirm the engine has started.
(LT req.)



**Puddle Lights.** L.E.D. lights activate when vehicle doors are unlocked using the keyless entry. A soft glow illuminates the ground, aiding entry and exit of the vehicle.

## 2014 Legacy | Owner Benefits

### Protecting Your Investment

Once you're part of our family, we'll be there for you. Every Subaru comes with 24-hour roadside assistance for 3 years or 36,000 miles. If you have trouble on the road, a tow to the nearest Subaru dealership and other services are just a phone call away. And to protect you over the long haul, we offer Added Security® — extended service agreements and maintenance plans that will help protect your car for up to 7 years or 100,000 miles. They're the only mechanical and maintenance plans backed by Subaru, and because we've been backing them for more than 30 years, they're agreements you can trust. Your dealer has full coverage details.

### Warranties

**New Car Limited Warranty**
3 years or 36,000 miles, whichever comes first.

**Powertrain Limited Warranty**
5 years or 60,000 miles, whichever comes first.

**Wear Item Limited Warranty**
3 years or 36,000 miles, whichever comes first.
Repairs to the following items will also be covered under Wear Item Limited Warranty:
- Brake Pads
- Wiper Blades
- Clutch Linings
- Transmitter Batteries

**Rust Perforation Limited Warranty**
5 years, unlimited mileage.

### Subaru Badge of Ownership

True commitment shows through. For Subaru owners, it shows in kayak scuffs and snowboard scratches. It can take the form of dog hair that just won't come out, fresh coats of dust, or extra coats of wax. For many, the Subaru Badge of Ownership lets them show their commitment to the life they live and the confidence that has inspired them to fully embrace it. Owners can order badges online for free, stick them on their car, and let everyone know how they experience the world. Which one would you get?







Information Provided by
DEALER

## 2014 Legacy | Dimensions



| Length/Width/Height | 187.2 inches/71.7 inches /60.7 including mirrors 59.3 inches |
|---|---|
| Wheelbase | 108.3 inches |
| Track (front/rear) | 61.6 inches/62.0 inches |
| Base curb weight (manual/automatic) | 2.5i  3,315 lbs/3,392 lbs<br>2.5i Premium  N/A/3,386 lbs<br>2.5i Sport  N/A/3,436 lbs<br>2.5i Limited  N/A/3,424 lbs<br>3.6R Limited:  N/A/3,545 lbs |



| Headroom (front/rear) | 40.3 inches/37.5 inches (with available moonroof: 38.1 inches/37.5 inches) |
|---|---|
| Legroom (front/rear) | 43.0 inches/37.8 inches |
| Shoulder room (front/rear) | 56.3 inches/56.1 inches |
| Hip room (front/rear) | 54.5 inches/53.9 inches |
| Passenger volume | 103.0 cubic feet (with available moonroof: 100.8 cubic feet) |
| Trunk volume | 14.7 cubic feet |

## 2014 Legacy | Colors

**Paint**



Satin White Pearl    Ice Silver Metallic    Tungsten Metallic    Twilight Blue Metallic

Deep Indigo Pearl    Venetian Red Pearl    Carbide Gray Metallic    Crystal Black Silica[7]

**Upholstery**



Black Striated Cloth (BSC)    Ivory Striated Cloth (ISC)



Off-Black Leather (OBL)    Warm Ivory Leather (WIL)

| Color Combinations | 2.5i | 2.5i Premium | 2.5i Sport | 2.5i Limited | 3.6R Limited |
|---|---|---|---|---|---|
| Satin White Pearl | ISC | ISC | BSC | WIL | WIL |
| Ice Silver Metallic | BSC | BSC | BSC | OBL | OBL |
| Tungsten Metallic | ISC | ISC | — | WIL | WIL |
| Twilight Blue Metallic | BSC or ISC | BSC or ISC | BSC | OBL or WIL | OBL or WIL |
| Deep Indigo Pearl | ISC | ISC | — | WIL | WIL |
| Venetian Red Pearl | BSC or ISC | BSC or ISC | BSC | OBL or WIL | OBL or WIL |
| Carbide Gray Metallic | BSC | BSC | BSC | OBL | OBL |
| Crystal Black Silica[7] | ISC | ISC | BSC | WIL | WIL |

— Not available

Information Provided by<br>DEALER

## Responsible. Reliable. **Ready to join the family.**

At Subaru, we're committed to building a lasting, rewarding relationship with you and the world we share. We start by building our vehicles to last—it's why 96% of all the vehicles we've built in the last 12 years are still on the road today.[1] We also share your desire for a cleaner, greener world. Select 2014 Legacy and Outback, plus every 2014 non-turbo Forester and Impreza, and XV Crosstrek models achieve Partial Zero Emission Vehicle—PZEV[2]—status, because of their exceptionally low emissions. What's more, in 2004 Subaru of Indiana Automotive, Inc., (SIA) became the first manufacturing facility in the U.S. to reach zero-landfill status—nothing from its manufacturing efforts ever goes into a landfill. Subaru is headquartered in a zero-landfill office in Cherry Hill, NJ.



1 Based on Polk U.S. Vehicles in Operation registration information for MY 2013-2015 as of January 2013.   2 2014 Legacy 2.5L non-turbo achieving a Partial Zero Emission Vehicle (PZEV) rating by the California Air Resources Board is available in all locations. PZEV class is offered in California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Rhode Island and Vermont—all be eligible for the 50-state SULEV tailpipe emission controls. Delaware, Oregon, Pennsylvania and Washington vehicles are not covered under PZEV emission control warranty. See your nearest Subaru dealer for additional information.

Some images shown are for illustration purposes only. Specifications in this brochure are based on the latest product information available at the time of publication. For the most up-to-date and detailed product information, log on to www.subaru.com. Some equipment shown in photograph, is the brochure is optional at extra cost. Specific options may be available only in combination with other options. Specific combinations of equipment or features may vary from time to time and by geographic area. Certain accessories and equipment may not be available at the time of publication. Subaru of America, Inc., reserves the right to change or discontinue at any time, without notice, prices, colors, materials, equipment, accessories, specifications, models and packages without incurring any obligation to make the same or similar changes on vehicles previously sold. Colors shown may vary due to reproduction limits of printing processes.

This brochure was prepared by Subaru of America, Inc. It contains data of Subaru of America, Inc., is reliable only on cars sold by the final retail purchaser through an authorized Subaru dealer in the continental U.S. or Alaska. Every owner of the car is (may be several) period shall be added to the benefit of those warranties. Subaru, SUBARU BOXER, Legacy, Outback, Impreza, XV Crosstrek and Forester are registered trademarks. Confidence in Motion and StarBill are trademarks of Fuji Heavy Industries, Ltd. BrakLight is a registered trademark of Fuji Heavy Industries, Ltd. Harman Kardon is a registered trademark of Harman International Industries, Incorporated. Aha is a trademark of HARMAN International Industries, Incorporated. Bluetooth is a registered trademark of Bluetooth SIG, Inc. HD Radio is a registered trademark of the iBiquity Digital Corporation. SiriusXM is a registered trademark of Sirius Company is a wholly owned subsidiary of Johnson Controls. Apple, iPod and iTunes are registered trademarks of Apple Inc. SiriusXM and SiriusXM are registered trademarks of SiriusXM Radio Inc. For more information, contact your Subaru dealer or log on to www.subaru.com.

These brochures were printed with vegetable-based inks and are based using a "Green Printing Process" and FSC® standards. The Forest Stewardship Council™ (FSC) is an international organization that brings people together to find solutions which promote responsible stewardship of the world's forests and environments.

By producing these brochures in a greener, rather than a traditional methods, we saved 45 trees preserved for the future. 35,420 gallons of wastewater were saved. 2,870 lbs solid waste not generated. 7,852 lbs net greenhouse gases prevented. 85,000,000 BTUs energy not consumed. Calculations provided by Environmental Paper Network. FSC® is not responsible for any calculations on selling provided.

**Love.** It's what makes a Subaru, a Subaru.



Confidence in Motion

This brochure is printed in the U.S.A.  on 100% recycled paper.   ©2013 Subaru of America, Inc.  14-LEG/OUT-IZZ-IS-1413AC  10M  2/13  CG

PRIORITY MAIL LEGAL
SIZE POSTAGE REQUIRED

**PRESS FIRMLY TO SEAL**



UNITED STATES
POSTAL SERVICE.    *Retail*

P

**US POSTAGE PAID**

**$7.65**

Origin: 75260
07/03/19
4822000202-18

**PRIORITY MAIL 2-Day ®**

1 Lb 4.20 Oz

**1006**

EXPECTED DELIVERY DAY: 07/08/19

C005

SHIP
TO:
155 SAINT JOSEPH ST
MOBILE AL 36602-3914

**USPS TRACKING NUMBER**

9505 5122 0455 9184 3577 21

Eric Drake
10455 North Central Expressway
Suite 109/270
Dallas, Texas 75231

**Clerk of the Court**
**United States District Court**
**Southern District of Alabama**
**155 St. Joseph Street**
**Mobile, AL 36602**



Legal Flat Rate Envelope
EP14L February 2014

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE



UNITED STATES
POSTAL SERVICE.